217 P.3d 768 (2009)
STATE of Washington, Petitioner,
v.
Ricardo INIGUEZ, Respondent.
No. 81750-2.
Supreme Court of Washington, En Banc.
Argued May 7, 2009.
Decided October 8, 2009.
*769 Frank William Jenny, II, Franklin County Prosecutor's Office, Pasco, WA, for Petitioner.
James Edward Egan, James E. Egan PS, Kennewick, WA, for Respondent.
Tom P. Conom, The Conom Law Firm, Lynnwood, WA, for Amicus Curiae on behalf of Washington Association of Criminal Defense Lawyers.
*770 STEPHENS, J.
¶ 1 This case requires us to examine the contours of the constitutional right to a speedy trial. Following his arrest on four counts of first degree robbery, Ricardo Iniguez remained in custody pending a joint trial with his codefendant. The State moved for a total of four trial continuances, the last of which the State sought because it belatedly learned a key witness was out of town. In addition, Iniguez's codefendant and counsel sought various continuances. Iniguez objected to all continuance requests and also moved for a bail reduction, severance, and a dismissal of the charges against him. The trial court denied all of Iniguez's motions. Trial began more than eight months after Iniguez's arrest, and the jury convicted him on all counts. The Court of Appeals reversed Iniguez's conviction and dismissed the charges against him with prejudice. While rejecting Iniguez's claim that the continuances violated the allowed time for trial under CrR 3.3, the court held that the more than eight-month delay between arrest and trial was presumptively prejudicial and violated Iniguez's constitutional right to a speedy trial. We reverse the Court of Appeals and hold there was no constitutional speedy trial violation under either article I, section 22 of the Washington Constitution or the Sixth Amendment to the United States Constitution.

FACTS AND PROCEDURAL HISTORY
¶ 2 Iniguez was arrested on May 25, 2005 and eventually charged with four counts of first degree robbery with a special firearm allegation. At arraignment, the court set trial for July 27, 2005, and Iniguez's attorney notified the court that due to a planned vacation, he would not be available for the trial date. On July 26th, the State filed a stipulation to join Iniguez with codefendant, Jimmy McIntosh. McIntosh had previously waived his speedy trial rights, and his trial was set for October 5, 2005. Noting his previously-disclosed unavailability, Iniguez's attorney asked for a two-week continuance. The State also moved for a continuance to October 5th based on the joinder. Iniguez objected to a continuance and filed a pro se motion to dismiss based on a violation of his constitutional right to a speedy trial. In the alternative, Iniguez requested that his bail be reduced so that he could be released pending trial. The court granted the State's continuance to October 5th, holding that concerns about judicial economy and trying the two defendants together outweighed Iniguez's speedy trial rights. The court refused to address the motion to dismiss until it was properly filed and served and denied Iniguez's motion to reduce bail.
¶ 3 On September 27, 2005, the State and McIntosh agreed to another continuance to November 16th, at least in part because the prosecutor had not interviewed all the witnesses.[1] McIntosh waived his speedy trial rights. Iniguez again objected to the continuance, arguing it violated his right to a speedy trial. The court granted the continuance to November 16th based on the joinder of the cases.
¶ 4 At a pretrial hearing on November 8, 2005, McIntosh's counsel notified the court that he had a conflict with the trial date due to previously-scheduled trials in other counties. Iniguez again objected to a continuance based on his speedy trial rights and moved to sever his case from McIntosh's. The court denied the motion without explanation and set trial for January 4, 2006.
¶ 5 On January 3, 2006, the State filed a motion for a continuance due to the unexpected unavailability of a material witness. On December 18, 2005, the sheriff's office unsuccessfully attempted to serve the witness *771 with a subpoena to appear on the new trial date. It was later discovered that the witness had traveled to Mexico to visit family and would not return until early February. While the witness had been served with a subpoena for previous trial dates and was therefore aware he was under a continuing obligation to testify until dismissed, there was no evidence that the State informed the witness of the new trial date prior to the attempted service of the subpoena on December 18, 2005.
¶ 6 Because the witness was out of town until early February, the State requested a new trial date of February 8, 2006. Both Iniguez and McIntosh objected to the continuance, and Iniguez moved to dismiss with prejudice due to a speedy trial violation. In the alternative, Iniguez renewed his motion for severance. Both Iniguez and McIntosh argued that they were prejudiced by their seven-month incarceration, though neither identified any specific prejudice. The judge determined that the State was not at fault for the witness's unavailability and that there would be no prejudice from a continuance of only a little over 30 days. The court granted the State's motion for a continuance and scheduled trial for February 8, 2006.
¶ 7 Trial began with jury selection on February 8, 2006. During pretrial motions, Iniguez moved to dismiss the charges but the trial court denied his motion. After one day of trial testimony, the trial court granted a mistrial based on inaccurate translations made by the court-appointed interpreter. The second trial began on April 12, 2006. The jury convicted Iniguez of four counts of first degree burglary with special findings that he was armed with a firearm.
¶ 8 Iniguez appealed, arguing that the numerous continuances violated the time for trial rules under CrR 3.3 and his speedy trial rights under the federal and state constitutions. The Court of Appeals reversed Iniguez's conviction and dismissed the case with prejudice. State v. Iniguez, 143 Wash.App. 845, 850, 180 P.3d 855 (2008). The court held that, while the numerous continuances did not violate CrR 3.3, they did violate Iniguez's constitutional speedy trial rights. Id. at 855, 859, 180 P.3d 855. The Court of Appeals explained that the more than eight-month delay between arrest and trial was presumptively prejudicial and resulted in a violation of Iniguez's constitutional right to a speedy trial. Id. at 859, 180 P.3d 855. The State petitioned for review, which we granted. State v. Iniguez, 164 Wash.2d 1025, 195 P.3d 958 (2008).

ANALYSIS
¶ 9 At the outset, there is a disagreement over the proper standard of review. The State argues that we review a trial courts' decisions to grant a continuance and deny severance for an abuse of discretion. In contrast, in an amicus curiae brief, the Washington Association of Criminal Defense Lawyers (WACDL) argues that a constitutional question of speedy trial rights is reviewed de novo, citing Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), and Doggett v. United States, 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992).
¶ 10 Both sides are, in a sense, correct. It is true that we review the denial of a severance motion for an abuse of discretion. State v. Dent, 123 Wash.2d 467, 484, 869 P.2d 392 (1994). Similarly, we review a decision to grant or deny a continuance for an abuse of discretion. State v. Flinn, 154 Wash.2d 193, 199, 110 P.3d 748 (2005). However, a court "necessarily abuses its discretion by denying a criminal defendant's constitutional rights." State v. Perez, 137 Wash. App. 97, 105, 151 P.3d 249 (2007). And we review de novo a claim of a denial of constitutional rights. See Brown v. State, 155 Wash.2d 254, 261, 119 P.3d 341 (2005); see also United States v. Wallace, 848 F.2d 1464, 1469 (9th Cir.1988) (a Sixth Amendment speedy trial claim is reviewed de novo). Because Iniguez argues his constitutional speedy trial rights were violated, our review is de novo.
¶ 11 Iniguez argues that the more than eight-month delay between his arrest and first trial was presumptively prejudicial and violated his speedy trial rights under article I, section 22 of the Washington Constitution and the Sixth Amendment to the United *772 States Constitution.[2] He further contends that article I, section 22 provides broader speedy trial protections than the Sixth Amendment. Iniguez suggests that under article I, section 22, any pretrial delay of more than six months for incarcerated defendants conclusively establishes a constitutional violation.
¶ 12 The State responds that no violation of Iniguez's speedy trial rights occurred because the delay between the arrest and his first trial was not long enough to be presumptively prejudicial under either article I, section 22 or the Sixth Amendment. In the alternative, the State argues that even if the delay was presumptively prejudicial, the balancing of the relevant factors under Barker demonstrates that there was no constitutional violation. Finally, the State contends that article I, section 22 was not intended to provide greater protections than the Sixth Amendment.
¶ 13 When we are presented with both federal and state constitutional arguments, we turn first to our own constitution. State v. Johnson, 128 Wash.2d 431, 443, 909 P.2d 293 (1996). We have never before addressed whether and, if so, to what extent speedy trial rights are uniquely protected under article I, section 22 of our constitution.

1. Speedy Trial Protections under Article I, Section 22

¶ 14 Article I, section 22 of the Washington Constitution provides that "[i]n criminal prosecutions the accused shall have the right... to have a speedy public trial." Because we have not previously determined what a "speedy public trial" requires under our constitution, it is useful to review the speedy trial protections guaranteed by the Sixth Amendment to the United States Constitution as a backdrop to the analysis of our own constitution. See State v. Fortune, 128 Wash.2d 464, 474-75, 909 P.2d 930 (1996) (noting that while federal cases are not binding for purposes of interpreting our state's constitution, they can be "`important guides'" in our analysis (quoting State v. Gunwall, 106 Wash.2d 54, 61, 720 P.2d 808 (1986))).
¶ 15 The Sixth Amendment reads in relevant part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. CONST. amend. VI. The right to a speedy trial "`is as fundamental as any of the rights secured by the Sixth Amendment.'" Barker, 407 U.S. at 515 n. 2, 92 S.Ct. 2182 (quoting Klopfer v. North Carolina, 386 U.S. 213, 223, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967)). If a defendant's constitutional right to a speedy trial is violated, the remedy is dismissal of the charges with prejudice. Id. at 522, 92 S.Ct. 2182.
¶ 16 It is recognized that some pretrial delay is often "inevitable and wholly justifiable." Doggett, 505 U.S. at 656, 112 S.Ct. 2686. However, the nature of the speedy trial right, which has been described as "`amorphous,' `slippery,' and `necessarily relative,'" makes it difficult to articulate at what point too much delay has occurred. Vermont v. Brillon, ___ U.S. ___, 129 S.Ct. 1283, 1290, 173 L.Ed.2d 231 (2009) (quoting Barker, 407 U.S. at 522, 92 S.Ct. 2182). As the United States Supreme Court noted:
It is ... impossible to determine with precision when the right [to a speedy trial] has been denied. We cannot definitely say how long is too long in a system where justice is supposed to be swift but deliberate. As a consequence, there is no fixed point in the criminal process when the State can put the defendant to the choice of either exercising or waiving the right to a speedy trial.... Thus ... any inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular context of the case.

Barker, 407 U.S. at 521-22, 92 S.Ct. 2182 (emphasis added; footnote omitted). To provide guidance, the Court in Barker adopted an ad hoc balancing test that examines the conduct of both the State and the defendant to determine whether speedy trial rights have been denied. Id. at 530, 92 S.Ct. 2182.
¶ 17 As a threshold to the Barker inquiry, a defendant must show that the *773 length of the delay crossed a line from ordinary to presumptively prejudicial.[3]Doggett, 505 U.S. at 651-52, 112 S.Ct. 2686; Barker, 407 U.S. at 530, 92 S.Ct. 2182. This inquiry is necessarily dependent on the specific circumstances of each case. Barker, 407 U.S. at 530-31, 92 S.Ct. 2182. For example, the Court noted that a tolerable delay for trial on "an ordinary street crime is considerably less than for a serious, complex conspiracy charge." Id. at 531, 92 S.Ct. 2182. Because drawing the line is a fact-specific inquiry, the Court expressly rejected the notion that the constitutional speedy trial right can be quantified into a specific time period. Id. at 523, 92 S.Ct. 2182. Moreover, a showing of presumptive prejudice cannot, by itself, prove a speedy trial violationmore is required. Doggett, 505 U.S. at 655-56, 112 S.Ct. 2686 (citing United States v. Loud Hawk, 474 U.S. 302, 315, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986)).
¶ 18 Under the Sixth Amendment analysis, once the defendant demonstrates a delay is presumptively prejudicial, that showing triggers the remainder of the Barker inquiry, which then examines the nature of the delay to determine if a constitutional violation occurred. See id. at 651, 112 S.Ct. 2686. Some of the factors relevant to this determination are the length and reason for the delay, whether the defendant has asserted his right, and the ways in which the delay cause prejudice to the defendant. Barker, 407 U.S. at 530, 92 S.Ct. 2182. These are not the exclusive factors, as other circumstances may be relevant in the inquiry. Id. at 533, 92 S.Ct. 2182. Nor are any of the factors, by themselves, necessary or sufficient. Id.
¶ 19 The first factor in the Barker inquiry, the length of the delay, focuses on the extent to which the delay stretches past the bare minimum needed to trigger the Barker analysis. Doggett, 505 U.S. at 652, 112 S.Ct. 2686.
¶ 20 The second factor in the inquiry is the reason for the delay. Barker, 407 U.S. at 531, 92 S.Ct. 2182. "`[D]ifferent weights [are to be] assigned to different reasons' for delay." Doggett, 505 U.S. at 657, 112 S.Ct. 2686 (first alteration in original) (quoting Barker, 407 U.S. at 531, 92 S.Ct. 2182). If the defendant asks for the delay or agrees to the delay, then the defendant is deemed to have waived his speedy trial rights as long as the waiver is knowing and voluntary. Barker, 407 U.S. at 529, 92 S.Ct. 2182. On the other hand, a deliberate delay caused by the government to frustrate the defense will be weighted heavily against the State. Id. at 531, 92 S.Ct. 2182. If the State is merely negligent or the delay is due to overcrowded courts, the delay will still be weighed against the State, though to a lesser extent. Id. And a valid reason, such as a missing witness, may justify a reasonable delay. Id.
¶ 21 The third factor is the extent to which the defendant asserts his speedy trial right. Id. The Court in Barker recognized that a defendant is more likely to complain the more serious the deprivation is. Id. Therefore, the defendant's assertion of his speedy trial right is entitled to "strong evidentiary weight." Id. at 531-32, 92 S.Ct. 2182. The defendant's assertions, however, must be objectively examined in light of the defendant's other conduct. Loud Hawk, 474 U.S. at 314, 106 S.Ct. 648. If the defendant fails to assert the right, it will be more difficult to prove a violation. Barker, 407 U.S. at 532, 92 S.Ct. 2182.
¶ 22 The fourth factor is prejudice to the defendant as a result of the delay. Id. Prejudice generally involves (1) "`oppressive pretrial incarceration,'" (2) "`anxiety and concern of the accused,'" and (3) "`the possibility that the [accused's] defense will be impaired' by dimming memories and loss of exculpatory evidence." Doggett, 505 U.S. at 654, 112 S.Ct. 2686 (alteration in original) (quoting Barker, 407 U.S. at 532, 92 S.Ct. 2182). Pretrial incarceration disadvantages the accused because it often means job loss and disruption to family life. Barker, 407 U.S. at 532, 92 S.Ct. 2182. It also has a practical effect of hampering a defendant's preparation of his defense because he cannot *774 gather evidence or contact witnesses on his own behalf. Id. at 533, 92 S.Ct. 2182.
¶ 23 While impairment to the defense is the most serious form of prejudice, it is often the most difficult to prove because "what has been forgotten [or lost] can rarely be shown." Id. at 532, 92 S.Ct. 2182. Accordingly, the United States Supreme Court held that a defendant is not required to substantiate actual prejudice to his ability to defend himself because "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." Doggett, 505 U.S. at 655, 112 S.Ct. 2686. Courts presume this prejudice to the accused "intensifies over time." Id. at 652, 112 S.Ct. 2686.
¶ 24 With the federal law backdrop in mind, we turn to the parties' Gunwall analyses.[4] Iniguez and amicus WACDL argue that article I, section 22 offers greater protection than the Sixth Amendment. For support, they point to the longstanding time for trial rules in this state, providing that incarcerated criminal defendants must be tried within 60 days of commencement of the action. See former RCW 10.46.010 (1909), repealed by Laws of 1984, ch. 76, § 29; CrR 3.3(b).
¶ 25 The State responds that article I, section 22 was not intended to grant broader speedy trial rights than the Sixth Amendment, emphasizing that the texts of the state and federal provisions are almost identical. Additionally, the State argues that our prior case law adopts the language of the federal balancing test, which is proof that state speedy trial rights track rights under the Sixth Amendment.
¶ 26 To determine whether article I, section 22 should be interpreted to provide greater protection than the Sixth Amendment, we consider six nonexclusive, neutral criteria: (1) "[t]he textual language of the state constitution"; (2) "[s]ignificant differences in the texts of parallel provisions of the federal and state constitutions"; (3) "[s]tate constitutional and common law history"; (4) "[p]reexisting state law"; (5) "[d]ifferences in structure between the federal and state constitutions"; and (6) "[m]atters of particular state interest or local concern." Gunwall, 106 Wash.2d at 61-62, 720 P.2d 808.
¶ 27 Here, the first two factors do not favor recognizing greater protection under article I, section 22 because the language of the two provisions is almost identical. As noted above, the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. CONST. amend. VI. Washington Constitution article I, section 22 states that "[i]n criminal prosecutions the accused shall have the right ... to have a speedy public trial." Any textual differences between the two provisions are minor and do not provide a basis for reading article I, section 22 more expansively than the Sixth Amendment.
¶ 28 Likewise, the third factorstate constitutional and common law historydoes not suggest greater protection under article I, section 22. First, neither Iniguez nor amicus WACDL provides any historical evidence that the framers of the Washington Constitution intended a different scope of speedy trial rights than under the Sixth Amendment. Second, as we have said in another context, this factor might lean more toward independent analysis if the language of the state and federal provisions differed in any meaningful way. See State v. Russell, 125 Wash.2d 24, 60, 882 P.2d 747 (1994) (noting that the third Gunwall factor would have much greater significance if article I, section 9 of the Washington Constitution used language that "differed in any great degree" from the language used in the Fifth Amendment).
¶ 29 Neither does the fourth factor preexisting state lawsupport finding greater protection under article I, section 22. Iniguez and amicus WACDL argue that the long-time existence of statutes and court rules imposing restrictive time lines for trial indicate that article I, section 22 provides greater protection than the Sixth Amendment. However, Iniguez and amicus misinterpret *775 the nature and purpose of those statutes and court rules.
¶ 30 While the statutes and court rules governing speedy trial rights were enacted for the purpose of enforcing the constitutional right to a speedy trial, they are not themselves a guaranty of constitutional rights. State v. Brewer, 73 Wash.2d 58, 62, 436 P.2d 473 (1968) (interpreting CrR 3.3's precursor, RCW 10.46.010). Instead, CrR 3.3 provides a framework for the disposition of criminal proceedings without establishing any constitutional standards.[5] 12 ROYCE A. FERGUSON, JR., WASHINGTON PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 1207, at 256 (3d ed.2004). As a result, "a violation of the rules is not necessarily a constitutional deprivation." State v. Fladebo, 113 Wash.2d 388, 393, 779 P.2d 707 (1989) (citing State v. White, 94 Wash.2d 498, 501, 617 P.2d 998 (1980)).
¶ 31 Further, the early versions of the time for trial rules did not necessarily indicate an intent to create a rule more stringent than the Sixth Amendment. Laws of 1909, chapter 249, section 60, codified as former RCW 10.46.010, provided that a dismissal for a violation of the time for trial provision did not bar the State from refiling charges, so long as the statute of limitations had not run. Brewer, 73 Wash.2d at 62-63, 436 P.2d 473. In contrast, a constitutional speedy trial violation results in a dismissal with prejudice. Barker, 407 U.S. at 522, 92 S.Ct. 2182; see State v. Christensen, 75 Wash.2d 678, 688, 453 P.2d 644 (1969) (noting that dismissal with prejudice was not the appropriate remedy where there was no constitutional speedy trial violation). We previously emphasized that in enacting these time-for-trial rules, the legislature "did not conceive []or contemplate that the limitation so established should become an inflexible yardstick by which the constitutional guarantees to a speedy trial of felony charges would be measured." Brewer, 73 Wash.2d at 62, 436 P.2d 473.
¶ 32 Additionally, our case law has never viewed speedy trial rights under our state constitution any differently from those under the federal constitution.[6] For instance, in State v. Alter, 67 Wash.2d 111, 406 P.2d 765 (1965), we had to determine whether a 10-year pretrial delay due to the defendant's commitment at Western State Hospital violated article I, section 22. In our analysis, we noted that whether a trial has been speedy "`must be determined in the light of the circumstances of each particular case.'" Id. at 119, 406 P.2d 765 (quoting State ex rel. Orcutt v. Simpson, 125 Wash. 665, 666, 216 P. 874 (1923)). In determining that the delay was not unconstitutional, we gave great consideration to federal case law, as well as case law from New York and Minnesota. Id. at 120-21, 406 P.2d 765. Importantly, we relied upon a federal case, United States ex rel. Von Cseh v. Fay, 313 F.2d 620 (2d Cir.1963), which laid out four factors a court should use to determine a speedy trial violation: "`the length of delay, the reason for the delay, the prejudice to defendant, and waiver by the defendant.'" Alter, 67 Wash.2d at 120, 406 P.2d 765 (quoting Fay, 313 F.2d at 623). In adopting that federal analysis for a challenge under article I, section 22, we in no way indicated that the state constitution offered different or greater protection than the Sixth Amendment.
¶ 33 Similarly, in Brewer, we cited to Alter and applied the same federal four-factor test used there. Brewer, 73 Wash.2d at 62, 63-64, 436 P.2d 473. Again, in Christensen, we looked to the four-factor test as cited in Brewer to conclude there was no constitutional speedy trial violation. Christensen, 75 Wash.2d at 686, 453 P.2d 644. As before, we looked to federal case law to explain the four factors. Id. at 686-87, 453 P.2d 644. There was no mention in either Brewer or Christensen *776 of any difference between the protections offered by the state constitution and the federal constitution.[7]
¶ 34 Turning to the fifth factor, differences in structure between the federal and state constitutions, we have previously noted that this factor generally supports greater protections under our state constitution. Russell, 125 Wash.2d at 61, 882 P.2d 747. "The state constitution limits powers of state government, while the federal constitution grants power to the federal government." Id. (citing Gunwall, 106 Wash.2d at 66, 720 P.2d 808).
¶ 35 And lastly, the sixth factormatters of particular state interest or local concern does not suggest greater protection under article I, section 22. Iniguez and amicus again point to the long-standing statutes and court rules governing time for trial as evidence that this state has a particular interest in ensuring speedy trials. However, as discussed above, neither has shown that the State intended any of these rules to create a more stringent constitutional standard. As we previously observed, the choice of 60 days as the cut-off for bringing a defendant to trial is "`arbitrary,'" Brewer, 73 Wash.2d at 62, 436 P.2d 473 (quoting 5 RONALD A. ANDERSON, WHARTON'S CRIMINAL LAW AND PROCEDURE § 1912 n. 2 (Supp.1964)), in the sense that it reflects a policy choice made by the legislature and later this court. It does not dictate the Washington constitutional analysis or suggests that article I, section 22 protects speedy trial rights differently from the Sixth Amendment.
¶ 36 Accordingly, we hold that article I, section 22 requires a method of analysis substantially the same as the federal Sixth Amendment analysis and does not afford a defendant greater speedy trial rights.

2. Were Iniguez's Speedy Trial Rights Violated?

¶ 37 Having established the method of analysis under article I, section 22 and the Sixth Amendment, we turn to the facts of the case at hand. The Court of Appeals agreed with Iniguez that the pretrial delay was presumptively prejudicial. Iniguez, 143 Wash. App. at 859, 180 P.3d 855. The court surveyed cases from other jurisdictions and concluded that the consensus is to presume prejudice for delays of between eight months and one year. Id. at 858-59, 180 P.3d 855. Because the delay in this case was more than eight months, the Court of Appeals held it qualified as presumptively prejudicial. Id. at 859, 180 P.3d 855.
¶ 38 In analyzing the Barker factors, the Court of Appeals noted that (1) Iniguez was never the cause of any pretrial delay, (2) the delay due to the unavailability of the witness should be weighed against the State, (3) Iniguez consistently asserted his speedy trial rights by objecting to all delays, and (4) Iniguez was prejudiced by his pretrial incarceration which caused anxiety and concern and was exacerbated by the delay of his trial. Id. at 855-58, 180 P.3d 855. Further, with respect to the trial court's desire to try Iniguez in conjunction with his codefendant, the Court of Appeals held that a defendant's invocation of his speedy trial rights necessarily trumps the policy favoring joinder of trials. *777 Id. at 856, 180 P.3d 855 (citing United States v. Grimmond, 137 F.3d 823, 828 (4th Cir.1998)).
¶ 39 We appreciate the Court of Appeals' attempt to work through the appropriate speedy trial analysis, particularly given the absence of guidance in our decisions since Barker and the confusion introduced by some United States Supreme Court decisions. However, we must disagree with the Court of Appeals' conclusion. As noted above, whether a delay is presumptively prejudicial is necessarily a fact-specific inquiry dependent on the circumstances of each case. Barker, 407 U.S. at 530-31, 92 S.Ct. 2182; Fladebo, 113 Wash.2d at 393, 779 P.2d 707 (citing Barker, 407 U.S. at 522, 92 S.Ct. 2182); Brewer, 73 Wash.2d at 62, 436 P.2d 473 (citing 5 ANDERSON, supra, § 1912 n. 2); Alter, 67 Wash.2d at 119, 406 P.2d 765 (citing Orcutt, 125 Wash. at 666, 216 P. 874). Once the delay is found to be presumptively prejudicial, this does not end the analysis but rather triggers the Barker inquiry. Doggett, 505 U.S. at 651-52, 112 S.Ct. 2686.
¶ 40 While the United States Supreme Court has consistently emphasized an individualized, fact-specific inquiry into whether a delay is presumptively prejudicial, some confusion was created by the Court's observation in a footnote in Doggett that "[d]epending on the nature of the charges, the lower courts have generally found postaccusation delay `presumptively prejudicial' at least as it approaches one year." Id. at 652 n. 1, 112 S.Ct. 2686. Many lower courts have seized on this statement as evidence that one year is the cutoff point for a presumptively prejudicial pretrial delay. See, e.g., Grimmond, 137 F.3d at 828; United States v. Beamon, 992 F.2d 1009, 1012-13 (9th Cir. 1993); State v. Goodroad, 521 N.W.2d 433, 437 (S.D.1994). This focus on the length of delay as the dispositive factor suggests that no fact-specific contextual analysis was performed.
¶ 41 Indeed, Division Two of our Court of Appeals has taken this approach. In State v. Corrado, 94 Wash.App. 228, 231, 972 P.2d 515 (1999), the defendant was charged with attempted first-degree murder and incarcerated for the entire 11-month pretrial delay. On appeal, the Court of Appeals found the 11-month delay presumptively prejudicial after noting that other courts have found delays between eight months and one year presumptively prejudicial. Id. at 233-34, 972 P.2d 515. There was no analysis of any other factors in the court's discussion.
¶ 42 The Court of Appeals below followed Division Two's reasoning. In finding the more than eight-month pretrial delay presumptively prejudicial, it cited Corrado and relied on the same general consensus that prejudice is presumed beginning between eight months and one year. Iniguez, 143 Wash.App. at 858-59, 180 P.3d 855.
¶ 43 This approach to the presumptively prejudicial analysis is out of step with the fact-specific nature of the Barker inquiry, which "is necessarily dependent upon the peculiar circumstances of the case." Barker, 407 U.S. at 530-31, 92 S.Ct. 2182. Therefore, we reject a formulaic presumption of prejudice upon the passing of a certain period of time. Of course, the passage of time is an important factor in this analysis. The length of delay is not, however, the only factor. The complexity of the charges and a reliance on eyewitness testimony are two other factors that also can be examined in this analysis. Barker, 407 U.S. at 531 & n. 31, 92 S.Ct. 2182.
¶ 44 Applying all of the relevant factors to Iniguez's case, we agree with the Court of Appeals that the pretrial delay here was presumptively prejudicial. First, the length of delay was substantial and Iniguez spent all of it in custody. Second, Iniguez was not facing complex charges involving multiple actors, such as with conspiracy charges, which might necessitate greater pretrial delay. Rather, Iniguez and his codefendant were accused of first degree robbery. Lastly, the State's case rested in large part on eyewitness testimony from multiple people, underscoring the importance of avoiding delays that could result in witnesses becoming unavailable or their memories fading. In light of all these circumstances, the over eight-month delay was presumptively prejudicial.
¶ 45 Because we find the delay presumptively prejudicial, we next examine the nature *778 of the delay, using the balancing test discussed in Barker, to determine whether a constitutional violation occurred. This involves a more searching examination of the circumstances, including the length of and reasons for delay, whether the defendant asserted his speedy trial rights, and prejudice to the defendant.[8]Id. at 530, 92 S.Ct. 2182; Fladebo, 113 Wash.2d at 393, 779 P.2d 707 (citing Barker, 407 U.S. at 530, 92 S.Ct. 2182). This is a determination to be made "`in the light of the circumstances of each particular case,'" Alter, 67 Wash.2d at 119, 406 P.2d 765 (quoting Orcutt, 125 Wash. at 666, 216 P. 874), which necessarily means that other considerations may also be relevant in a particular case.
¶ 46 The first factor in our inquiry is the length of delay. Doggett, 505 U.S. at 651-52, 112 S.Ct. 2686; Fladebo, 113 Wash.2d at 393, 779 P.2d 707. We do not consider this factor in the same way as in the presumptive prejudice analysis. Instead, what is important here is "the extent to which the delay stretches beyond the bare minimum needed to trigger" the inquiry. Doggett, 505 U.S. at 652, 112 S.Ct. 2686. While the passage of a specific period of time does not establish conclusively that a speedy trial violation occurred, the lapse of a lengthy period of time compels a court to give "`an extremely careful appraisal of the circumstances.'" Alter, 67 Wash.2d at 121, 406 P.2d 765 (quoting Fouts v. United States, 253 F.2d 215, 217 (6th Cir.1958)). In other words, the longer the pretrial delay, the closer a court should scrutinize the circumstances surrounding the delay.
¶ 47 Even though we agree that the pretrial delay here was presumptively prejudicial, it is just beyond the bare minimum needed to trigger the Barker inquiry under these circumstances. While Iniguez spent the entire pretrial period in incarceration, eight-plus months is not necessarily an undue delay. As such, this factor weighs only slightly against the State.[9]
¶ 48 The second factor in the inquiry is the reason for delay. Barker, 407 U.S. at 531, 92 S.Ct. 2182; Alter, 67 Wash.2d at 120, 406 P.2d 765. We look to each party's level of responsibility for the delay and assign different weights to the reasons for delay. Barker, 407 U.S. at 531, 92 S.Ct. 2182.
¶ 49 Here, even though the State requested all of the continuances, there was no evidence of an intent on the part of the State to interfere with Iniguez's speedy trial rights. The State requested the first two delays with respect to Iniguez because the State had already agreed to the delay with his codefendant and wanted to try the cases together. One of the delays was due at least in part to the State's need to interview witnesses. The third delay was requested by McIntosh's attorney for scheduling reasons. The State requested the fourth delay because it discovered about a week prior to trial that a key witness had left the country and was unavailable for trial. While there is some question as to whether the State could have acted more diligently to ensure the witness's appearance at trial, the unavailability of a key witness is a valid reason for a continuance. Id. On balance, none of the continuances can be described as unreasonable, especially in light of "the policy favoring joint trials," Dent, 123 Wash.2d at 484, 869 P.2d 392, and the juggling that trial courts must do to accommodate the schedules of multiple lawyers *779 and multiple witnesses.[10] Thus, this factor should not weigh against the State.
¶ 50 The third factor, the defendant's assertion of his speedy trial right, favors Iniguez. As previously mentioned, we consider whether and to what extent a defendant demands a speedy trial.[11]Barker, 407 U.S. at 528-29, 92 S.Ct. 2182. For example, the frequency and force of a defendant's objections should be taken into consideration, as well as the reasons why the defendant demands or does not demand a speedy trial. Id. at 529, 92 S.Ct. 2182. Additionally, we give "strong evidentiary weight" to a defendant's assertion of his speedy trial right. Id. at 531-32, 92 S.Ct. 2182. Here, Iniguez asserted his right at every continuance request. He objected, requested reduced bail, moved for a severance twice, and moved for a dismissal at least four times. Iniguez consistently asserted his speedy trial right, and thus, this factor weighs against the State.
¶ 51 The last factor is prejudice to the defendant. Prejudice is judged by looking at the effect on the interests protected by the right to a speedy trial: (1) to prevent harsh pretrial incarceration, (2) to minimize the defendant's anxiety and worry, and (3) to limit impairment to the defense. Id. at 532, 92 S.Ct. 2182. Even though impairment to the defense by the passage of time is the most serious form of prejudice, no showing of actual impairment is required to demonstrate a constitutional speedy trial violation. Id. As noted above, this is difficult to prove, and as a result, we presume such prejudice to the defendant intensifies over time. Doggett, 505 U.S. at 652, 112 S.Ct. 2686. Where it is shown, however, there will be a stronger case for finding a speedy trial violation. Here, Iniguez relies on the presumption of prejudice and does not try to show how the delay impaired his defense. Certainly, longer delays have been allowed. For instance, the Barker Court did not consider a ten-month pretrial incarceration to be prejudicial, absent any actual impairment of the defense. 407 U.S. at 534, 92 S.Ct. 2182.
¶ 52 On balance, the totality of the circumstances here does not support finding a speedy trial violation of constitutional magnitude to justify the extreme remedy of dismissal of the charges with prejudice. As a result, we hold that there was no state or federal constitutional speedy trial violation. The trial court had good reasons for granting each of the continuances Iniguez challenged and acted within the constitutional limits in balancing the competing interests of trying the codefendants jointly, accommodating trial preparation and scheduling concerns, and securing the defendant's constitutional rights.

CONCLUSION
¶ 53 We hold that article I, section 22 of the Washington State Constitution was not intended to provide broader speedy trial protections than the Sixth Amendment. Additionally, while the more than eight-month pretrial delay here was presumptively prejudicial, we hold that delay did not result in a violation of Iniguez's speedy trial rights under either article I, section 22 or the Sixth Amendment. We reverse the Court of Appeals and reinstate Iniguez's conviction.
WE CONCUR: ALEXANDER, C.J., C. JOHNSON, OWENS, and FAIRHURST, JJ.
CHAMBERS, J. (dissenting).
¶ 54 The majority finds that the nearly nine month delay in bringing Ricardo Iniguez to trial was presumptively prejudicial and that three out of four of the Barker[1] factors weigh against the State. Yet despite this and without much more the majority announces the seemingly contradictory holding *780 that the "totality of the circumstances" does not support a finding that Iniguez's right to a speedy trial was violated. Majority at 779. While I agree with the majority's conclusion that constitutional speedy trial analysis necessarily requires a fact-specific inquiry, given the facts of this case and the number of factors weighing against the State, I would hold that Iniguez was denied his right to a speedy trial and affirm the Court of Appeals. I respectfully dissent.
¶ 55 The majority begins by performing a Gunwall[2] analysis and concluding that article I, section 22 of our state constitution provides no greater protection to individuals claiming speedy trial violations than does the Sixth Amendment to the United States Constitution. The Gunwall issue was not raised below with the Court of Appeals and was not raised in this court until Iniguez filed his supplemental brief. Even after it was raised, the defendant's Gunwall analysis is limited to one page and argues only that because our State has a "long existing requirement that criminal defendants be tried in 60 days," it follows that article I, section 22 should be interpreted to give greater protection than its federal counterpart. Suppl. Br. of Resp't at 6. Generally, we decline to consider issues that are untimely and insufficiently briefed by the parties. State v. Wethered, 110 Wash.2d 466, 472, 755 P.2d 797 (1988). In my view, the issue was not timely presented and we have not been provided with sufficient argument or citation to authority from the parties to reach a decision. I would leave for another day a determination of whether our state constitution provides greater protection to defendants asserting their right to a speedy trial than the Sixth Amendment.
¶ 56 Turning to the merits of Iniguez's speedy trial claim, I generally agree with the majority's approach. The exact number of days a trial can be delayed before an individual's speedy trial right is violated is indeed impossible to determine with precision. Barker v. Wingo, 407 U.S. 514, 521, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The majority correctly concludes that the length of delay in this case coupled with the fact that Iniguez spent all of it in custody gives rise to a presumption of prejudice triggering the four-factor Barker analysis. Majority at 777-78. I cannot agree, however, with the majority's application of the particular facts of this case to those four factors.
¶ 57 The first factor considered in a Barker analysis is how long the delay "stretches beyond the bare minimum needed to trigger judicial examination of the claim." Doggett v. United States, 505 U.S. 647, 652, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). Iniguez was arrested on May 25, 2005, yet his first trial did not begin until February 8, 2006, a delay of nearly nine months.
¶ 58 Next, we consider the reasons for the delay. In this case there were many, and responsibility for most of them lies at the feet of the State. Over Iniguez's objections the court granted four continuances due to: (1) the joinder of Iniguez's case with that of Jimmy McIntosh's, (2) a need to interview witnesses, (3) a scheduling conflict, and (4) discovery of the unavailability of a key witness a week prior to trial. The second delay occurred because two months after Iniguez's arraignment the State had still not interviewed all of the witnesses. The last delay was caused because the State failed to inform its key witness that the trial date had yet again been changed and the witness had left the country on vacation. There is no indication the State made an attempt to bring the witness back so that the trial could proceed without delay.
¶ 59 Setting aside the question of whether our policy favoring joint trials should outweigh a defendant's speedy trial rights, I would give more consideration to the fact that none of the delays in this case were caused by Iniguez himself, and that in at least two instances continuances were required due to the State's lack of diligence. "A defendant has no duty to bring himself to trial; the State has that duty." Barker, 407 U.S. at 527, 92 S.Ct. 2182 (footnote omitted). While the need to interview witnesses or the unavailability of a key witness for trial may sometimes be valid reasons for a continuance, in this case had the State acted more *781 diligently, the delays could easily have been avoided. Unlike the majority, I think that on balance this factor should be weighed against the State.
¶ 60 I agree with the majority's conclusion that the third factor, the defendant's assertion of his speedy trial rights, weighs in favor of Iniguez. Iniguez objected to continuing the trial at every opportunity and twice moved for a severance when it became apparent that the needs of his codefendant were the cause of delay. As the Barker Court noted, the "defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." Id. at 531-32, 92 S.Ct. 2182. It is hard to imagine how Iniguez could have made any clearer his objection to the pretrial delay and his wish to assert his speedy trial rights. While the majority correctly concludes that this factor weighs against the State, I would emphasize that it does so heavily.
¶ 61 The last factor considered is the prejudice caused to the defendant by the delay. Iniguez was in jail during this entire process, and prejudice to the defendant should be presumed. The Barker Court wrote at length about the detrimental effect pretrial incarceration can have on defendants, noting, "[i]t often means loss of a job; it disrupts family life; and it enforces idleness.... The time spent in jail is simply dead time." Id. at 532-33, 92 S.Ct. 2182. While Iniguez has not attempted to demonstrate the delay impaired his defense, the Supreme Court has said that "impairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony `can rarely be shown.'" Doggett, 505 U.S. at 655, 112 S.Ct. 2686 (quoting Barker, 407 U.S. at 532, 92 S.Ct. 2182). As such, "affirmative proof of particularized prejudice is not essential to every speedy trial claim." Id. Iniguez spent nine months in jail, continually asking the State to bring this case to trial. I would conclude this last factor also weighs heavily against the State.
¶ 62 In applying the facts of this case to Barker's analytical framework, I conclude that Iniguez's constitutional speedy trial rights were violated. Even were the majority's analysis correct, we would still be left with a delay that was presumptively prejudicial and three of four factors weighing against the State. It is the State's burden to bring defendants to trial in a timely manner. That burden is heightened when the defendant is incarcerated, asserts his rights, and the delay extends. Although the remedy for such violations is harsh, I would hold that on the facts of this case the State did not meet its burden. I would dismiss the case with prejudice and affirm the Court of Appeals.
¶ 63 I dissent.
WE CONCUR: J. JOHNSON, SANDERS, and MADSEN, JJ.
NOTES
[1] The State insists that the Court of Appeals erroneously described the second continuance request as resulting from the State's desire to interview defense witnesses. Pet. for Review at 17; Suppl. Br. of Pet'r at 13. Yet, the record is quite clear that the State asked for the continuance, at least in part, because, as the prosecuting attorney told the court, "There are some additional witnesses that we do need to contact...." Report of Proceedings (Sept. 27, 2005) at 3. Later, in response to Iniguez's objection to the continuance, the prosecuting attorney stated, "I would like to put on the record the witnesses in [Iniguez's] case are exactly the same as for Mr. McIntosh. We have yet to interview two of them, and that is part of the continuance on the codefendant's case." Id. at 4.
[2] Iniguez did not cross-appeal the Court of Appeals' holding that there was no CrR 3.3 violation. Thus, the only issue before us is whether the delay was unconstitutional.
[3] The term "`presumptively prejudicial'" does not "indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the Barker enquiry." Doggett, 505 U.S. at 652 n. 1, 112 S.Ct. 2686.
[4] While Iniguez did not provide a Gunwall analysis until his supplemental brief, he has argued from the beginning that the pretrial delay violated the Washington Constitution. Therefore, the issue is properly before us.
[5] That there is a difference between speedy trial rights afforded by court rule or statute and those protected under the constitution was recognized by at least the beginning of the 20th century. See State v. Miller, 72 Wash. 154, 161-62, 129 P. 1100 (1913) (discussing the differences between article I, section 22 and the early statute imposing the 60-day rule).
[6] We have not addressed in any depth the appropriate analysis to determine what constitutes a constitutional speedy trial violation under article I, section 22 since Barker was released in 1972. As a result, some of our earlier cases may not reflect the evolution in the federal law occasioned by Barker and Doggett.
[7] Amicus WACDL argues that in Christensen, the four-factor test is disjunctive instead of conjunctive. See Amicus Curiae Br. of WACDL at 16 & n. 7. Amicus claims that because we used "or" instead of "and" in citing the four factors, we intended for each factor to be dispositive, rather than part of the balancing test used in Sixth Amendment speedy trial analysis. Amicus relies on this language as evidence that we consider article I, section 22 to be more protective than the Sixth Amendment. This argument fails to take into account that the test used in Christensen is the same one used in our previous case law and echoes precisely the federal analysis. Further, in context of the language used in Christensen, it is clear we were referring to the same test as used in federal law, but simply stating the proposition in the negative:

We find in the record none of the four factors heretofore adopted by this court, and by the Supreme Court of the United States upon which a denial of the constitutional right to a speedy trial can be said to depend: i.e., (1) a delay of such length alone as to amount to a denial of the right to a speedy trial; (2) prejudice to the defense arising from the delay; (3) a purposeful delay designed by the state to oppress the defendant; or (4) long and undue imprisonment in jail awaiting trial.
Christensen, 75 Wash.2d at 686, 453 P.2d 644 (emphasis added) (citation omitted).
[8] Our case law, which predates Barker and Doggett, phrases the relevant factors in slightly different language. As noted above, in Alter and Brewer we used the four factors laid out in Fay: length and reason for the delay, prejudice to the defendant, and waiver by the defendant. Alter, 67 Wash.2d at 120, 406 P.2d 765; Brewer, 73 Wash.2d at 62, 436 P.2d 473. In Christensen, after citing to Brewer, we identified the four factors as length of delay, prejudice to the defendant, whether the State purposely delayed the trial, and undue pretrial incarceration. 75 Wash.2d at 686, 453 P.2d 644. The minor language differences simply reflect the state of the case law at that time, and we do not read our language to create a different speedy trial test. While the analysis in some of our previous cases sometimes focused on one factor as more important than the others, we emphasize that no single factor in the inquiry is dispositive.
[9] Our analysis would not change even if we were to accept Iniguez's contention that the pretrial delay should be calculated using the beginning of the second trial, instead of the first. In that case, the delay would be more than 10 months. However, under the circumstances here, a more than 10-month delay is not extreme, either.
[10] At some point, of course, a defendant's constitutional right to a speedy trial outweighs the policy favoring joinder of accomplices and scheduling issues. At what point that occurs is not a question presented in this case, and we leave it for another day.
[11] Some of our earlier case law suggests that a failure to expressly demand a speedy trial constitutes a waiver of the speedy trial right. See, e.g., State ex rel. James v. Superior Court, 32 Wash.2d 451, 455, 202 P.2d 250 (1949). This is out of step with current case law, which requires that the government prove that a waiver of a constitutional right, such as the right to speedy trial, is knowing and voluntary. In re Pers. Restraint of James, 96 Wash.2d 847, 851, 640 P.2d 18 (1982).
[1] Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).
[2] State v. Gunwall, 106 Wash.2d 54, 54, 720 P.2d 808 (1986).