# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 75835-7-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| D'ANGELO CORDAY BROWN, | ) | |
| | ) | |
| Appellant. | ) | FILED: April 23, 2018 |

2018 APR 23 AM 9: 07
COURT OF APPEALS DIV 1
STATE OF WASHINGTON

TRICKEY, J. — D'Angelo Brown was charged with felony violation of a no-contact order. Brown appeals, arguing that there was insufficient evidence at trial to prove beyond a reasonable doubt that the alleged victim was the party protected by the no-contact order. Because there was sufficient evidence at trial that any rational trier of fact could have found beyond a reasonable doubt that the victim was the protected party, we affirm.

## FACTS

Brown and Bria Gomez met in 2012. Brown and Gomez began dating, and had a child together in May 2015. Gomez also had a child from a previous relationship. In April 2015, Gomez signed a lease by herself for a two bedroom apartment in Auburn.

In January 2015, there was a no-contact order in place that protected Gomez and restrained Brown. On September 22, 2015, Gomez went with Brown to the courthouse to request that the no-contact order be lifted. The trial court did not lift the existing no-contact order, but issued a modified no-contact order. The

protected party named in the modified no-contact order was "Bria E. Gomez."[1] The modified no-contact order found that Brown's relationship with the protected party was as an "[i]ntimate partner (former/current spouse; former/current domestic partner; parent of common child; former/current dating; or former/current cohabitants)."[2]

The modified no-contact order allowed Brown and the protected party to have "telephone, mail, or electronic contact; and in person in a therapeutic context, if approved by [Brown's] therapist; parties may have contact to exchange the children for visits."[3] The modified no-contact order prohibited Brown from coming within 1,000 feet of the protected party or the protected party's residence in all other circumstances. The modified no-contact order would remain in effect for five years.

On the morning of January 25, 2016, Brown met Gomez at Gomez's apartment to exchange the children. Around 12:00 a.m., when Gomez was in bed with her children, Brown returned to her apartment and knocked on her bedroom window, asking to be let inside. Gomez refused and Brown began hitting the bedroom window. Brown then went to the apartment's glass back door and began kicking it. Gomez ran to the bathroom and called 911.

Brown entered Gomez's apartment after opening her kitchen window. Brown said he was going to prison and wanted to say goodbye to the children. He

---

[1] Ex. 1 at 1.
[2] Ex. 1 at 2.
[3] Ex. 1 at 1.

2

also took a box of his belongings. The police arrived at the apartment, and Brown ran out of the back door.

The police located Brown's car in the apartment complex's parking lot, approximately 60 feet away from Gomez's apartment. In the early morning of January 26, Brown was arrested when he returned to his vehicle.

Brown was charged in part with domestic violence felony violation of a court order. At trial, Gomez identified the State's exhibit 1 as a certified copy of the September 22, 2015 modified no-contact order that protected her and restrained Brown. On cross-examination, Gomez was asked whether the name listed on the modified no-contact order was her name. After initially stating that it was her name, Gomez stated that it was not because her middle initial is not "E."[4]

Two recorded jail telephone calls were admitted at trial. On the same day that he was arrested, Brown had called his brother from the King County Jail. During the telephone call, Brown stated, "So this is another [expletive] violation of a no-contact order."[5]

In a telephone call between Gomez and Brown the day after Brown's arrest, Brown stated, "I mean, I don't know how long I can uh do this because we have a modified whatever, so technically I can't talk to you right now."[6] He then asked, "Are you pressing charges?"[7]

---

[4] Report of Proceedings (RP) (Aug. 3, 2016) at 256.
[5] Ex. 26 (Audio File "Redacted Call Unknown Male A" at 2 min., 12 sec.–2 min., 18 sec.).
[6] Ex. 26 (Audio File "Redacted Call Bria Gomez" at 17 sec.–29 sec.). Brown stipulated that the call was made to Gomez the day after he was arrested.
[7] Ex. 26 (Audio File "Redacted Call Bria Gomez" at 1 min., 14 sec. –1 min., 18 sec.).

After the State rested its case, Brown moved to dismiss the felony violation of a court order. Brown argued that the modified no-contact order protected "Bria E. Gomez," but the proffered evidence proved that Gomez's name was "Bria Rochelle Gomez."[8] The trial court denied Brown's motion, finding that the State had established a prima facie case, which included that Gomez was the party protected by the no-contact order. The trial court clarified that the error on the no-contact order went toward the weight of the evidence. Brown was convicted of felony violation of a court order.[9]

Brown appeals.

## ANALYSIS

### Sufficiency of the Evidence

Brown argues that the evidence at trial was not sufficient to prove beyond a reasonable doubt that Gomez was the party protected by the modified no-contact order. Based on the State's evidence at trial and reasonable inferences therefrom, any rational trier of fact could have found that Gomez was the party protected by the modified no-contact order. Therefore, we disagree with Brown's contention.

The State must prove each element of a charged crime beyond a reasonable doubt. In re Winship, 397 U.S. 358, 361-64, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970).

Violation of certain court orders, including orders issued under chapter 10.99 RCW, is a class C felony if the offender has at least two previous convictions

---

[8] RP (Aug. 10, 2016) at 37.
[9] Brown was acquitted of the other charges against him.

for violating the provisions of prior applicable court orders. RCW 26.50.110(5).[10]

The elements of the crime of violating a no-contact order are "the willful contact with another; the prohibition of such contact by a valid no-contact order; and the defendant's knowledge of the no-contact order." State v. Clowes, 104 Wn. App. 935, 944, 18 P.3d 596 (2001), disapproved of on other grounds by State v. Nonog, 169 Wn.2d 220, 237 P.3d 250 (2010).[11]

Evidence is sufficient to sustain a conviction if, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. State v. Green, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

Here, Brown argues that the evidence at trial was insufficient to prove beyond a reasonable doubt that Gomez was the party protected by the no-contact

---

[10] Chapter 10.99 RCW governs the official response to cases of domestic violence, including the protection of domestic violence victims. RCW 10.99.010. The modified no-contact order was issued in part pursuant to RCW 10.99.040, .045, .050. Brown stipulated to the fact that, on January 25, 2016, he had been convicted of violating provisions of a court order issued under chapter 10.99 RCW twice before.

[11] Brown further argues that the State must also prove the identity of the person named as the protected party, citing State v. Huber, 129 Wn. App. 499, 502, 119 P.3d 388 (2005).

In Huber, the appellate court examined whether, in a prosecution for bail jumping, there was sufficient evidence showing "that the person on trial was the same person who earlier had failed to appear in court." 129 Wn. App. at 500. The appellate court dismissed the defendant's conviction because the State had produced documents with the same name as the defendant but had submitted no other evidence to show that the person so named was the same person on trial. Huber, 129 Wn. App. at 503.

The present case does not concern bail jumping, and does not turn on Brown's identity as the "accused[] being the person to whom a document pertains." Huber, 129 Wn. App. at 502. Moreover, the elements of the crime of violation of a no-contact order provide for unlawful contact by a person protected by the no-contact order. Clowes, 104 Wn. App. at 944. Thus, we reject Brown's argument and decline to extend the analysis in Huber to the present case.

order. He relies solely on Gomez's testimony that the name on the modified no-contact order was different from her name because her middle initial is not "E."[12] But this ignores other evidence in the record that supports the conclusion that Gomez was the party protected by the modified no-contact order.

The modified no-contact order identified the protected party as Brown's intimate partner, which included a person who was a former or current person in a dating relationship and the parent of a common child. At trial, Gomez testified that she and Brown began dating in 2012, and had a child together in 2015.

Gomez further testified that she went to the courthouse with Brown on September 22, 2015 to lift an existing no-contact order. She identified the State's exhibit 1 as the modified no-contact order issued by the trial court on September 22, 2015 that was protecting her and restraining Brown on January 25 and 26, 2016, despite the difference in the listed name.

In addition, Brown's own statements in recorded telephone calls following his arrest give rise to the reasonable inference that Gomez was the party protected by the no-contact order. While talking to his brother, Brown stated that he had been arrested for a violation of a no-contact order. Later, Brown told Gomez that he could not talk for long because "we have a modified whatever," and also asked if Gomez was pressing charges. In light of the other evidence contained in the record and because both telephone calls were made soon after his arrest, a reasonable inference from Brown's statements are that he was arrested in part for violating a no-contact order protecting Gomez.

---

[12] Br. of Appellant at 7.

In sum, despite the error in the name listed on the modified no-contact order, there was sufficient evidence at trial and reasonable inferences therefrom that any rational trier of fact could have found the essential elements of Brown's offense beyond a reasonable doubt.[13]

Affirmed.

Trickey, J

WE CONCUR:

Mann, A.C.J—

Schindler, J.

---

[13] Brown filed a statement of additional grounds for review with this court. He argues that his Sixth Amendment right to a speedy trial was violated. He alleges that he did not waive his rights and did not sign any continuances, which he also argued before the trial court.

"It is recognized that some pretrial delay is often 'inevitable and wholly justifiable.'" State v. Iniguez, 167 Wn.2d 273, 282, 217 P.3d 768 (2009) (quoting Doggett v. United States, 505 U.S. 647, 656, 112 S. Ct. 2686, 120 L. Ed. 2d 520 (1992)). Thus, to establish a violation of his or her Sixth Amendment right to a speedy trial, "a defendant must show that the length of the delay crossed a line from ordinary to presumptively prejudicial." Iniguez, 167 Wn.2d at 283.

Here, the trial court noted that there was no evidence of mismanagement and that the delay was not unreasonable in light of the circumstances of the case. Brown has not provided additional arguments or evidence on appeal establishing that the delay in setting his case for trial was sufficient to become presumptively prejudicial. We reject Brown's arguments in his statement of additional grounds for review.