IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 30226-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| THOMAS MICHAEL KLINDWORTH, | ) | |
| | ) | |
| Appellant. | ) | |

PRICE, J.* — Thomas M. Klindworth appeals his driving under the influence (DUI) conviction, arguing the trial court violated both his constitutional right and rule based right to a speedy trial under CrR 3.3. He also contends (1) he was denied his right to present a defense, (2) a State's witness improperly commented on his constitutional right to remain silent, (3) the trial court violated his right to represent himself, (4) the trial court erred in denying his CrR 8.3 motion to dismiss for prosecutorial and court mismanagement, and (5) the court erred in imposing an ignition interlock requirement at sentencing. In his statement of additional grounds for review (SAG), he alleges (1) his

---

* Judge Michael Price is serving as judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

speedy trial rights were violated, (2) the prosecutor failed to release exculpatory evidence, (3) the prosecutor released slanderous information to a local newspaper to create negative pretrial publicity, (4) the blood evidence was tainted, (5) willful court misconduct and wrongful incarceration hampered his ability to present a defense, (6) the removal of defense counsel added one year to the pretrial process, (7) improper denial of public funds for his defense, and (8) the court improperly disallowed evidence that Mr. Klindworth spent months in jail before trial. Finding no reversible error, we affirm.

## FACTS

During the early morning of January 21, 2007, Franklin County Police Sergeant Jim Dickenson was on patrol and noticed a car traveling under the speed limit. The car swerved abruptly into the officer's lane of travel and quickly braked, almost causing a collision. Sergeant Dickenson had to slam on his brakes to avoid hitting the car. The car then slowed to 30 miles per hour in a 60 mile per hour zone. When the car crossed into the fog line, the sergeant activated his emergency lights.

When the sergeant approached the car, he could smell burnt methamphetamine. He observed that the driver, later identified as Mr. Klindworth, had extremely red eyes, dilated pupils, slurred speech, and was nervous, fidgety, and very talkative. Mr. Klindworth was reaching all over inside the car and appeared confused about the stop.

Sergeant Dickenson arrested Mr. Klindworth for driving under the influence of drugs.

After Sergeant Dickenson placed Mr. Klindworth in the back of his patrol car, Mr. Klindworth continued to be very fidgety and extremely talkative. Most of what he said did not make sense. The patrol car had a strong odor of methamphetamine. Mr. Klindworth eventually consented to a blood draw. Sergeant Dickenson took Mr. Klindworth to a local hospital for the blood test and advised Mr. Klindworth of his right to have an independent blood test. Mr. Klindworth requested that a third vial be drawn. However, he later failed to retrieve it.

On March 16, 2007, the State charged Mr. Klindworth with various counts related to the incident, including reckless driving and driving while under the influence. The State amended the information just before trial to a single count of driving while under the influence. Due primarily to Mr. Klindworth's failures to appear for scheduled court appearances, including a lengthy absence between September 9, 2010, and April 5, 2011, the case did not go to trial until July 2011.

At trial, Sergeant Dickenson testified that traveling under the speed limit is "one indicator of many for an impaired driver." Report of Proceedings (RP) (Vol. VI of VI) at 911. He characterized Mr. Klindworth's driving as "erratic and abnormal." RP (Vol. VI of VI) at 912. He explained that typical signs of methamphetamine use include fidgeting,

3

excessive talking, twitching of arms and legs, sweating, restlessness, being

argumentative, and irritability. Sergeant Dickenson stated, "When I walked up to the

vehicle [Mr. Klindworth] was moving about the vehicle very rapidly. He was reaching.

The entire vehicle where he could reach, he was reaching in the backseat, the consul [sic],

the passenger floor, in his pockets." RP (Vol. VI of VI) at 916-17.

Asa Louis, a Washington State Patrol toxicologist, testified that he tested the two

vials of blood drawn by the State and found "significant" levels of methamphetamine in

both vials. RP (Vol. II of III) at 108. He testified that these levels would cause fidgeting,

rapid speech and body movements, dilated pupils, and could potentially impair driving.

Mr. Klindworth did not testify or present witnesses. A jury found Mr. Klindworth

guilty as charged. Mr. Klindworth appeals.

## ANALYSIS

*Violation of CrR 3.3 Rights.* Mr. Klindworth first contends that the trial court

failed to bring him to trial within the time required under CrR 3.3. He also contends that

the State violated LCrR 3.2(a). We review the application of court rules de novo. *State v.*

*Carlyle*, 84 Wn. App. 33, 35-36, 925 P.2d 635 (1996). Whether a speedy trial rule was

violated, mandating dismissal, is a question of law, also reviewed de novo. *Id.* at 35.

CrR 3.3 governs the time for trial in criminal cases. Under CrR 3.3(b)(2), a

criminal defendant must be brought to trial within 90 days if not incarcerated. The 90 day period commences on the arraignment date, but the commencement date may be reset for various reasons under the rule. For example, the commencement date is reset when counsel is disqualified from representation. CrR 3.3(c)(2)(vii). In such a case, the 90 day period begins on the disqualification date. CrR 3.3(c)(2)(vii).

The commencement date is also reset for a defendant's failure to appear at any proceeding that requires the defendant's presence. CrR 3.3(c)(2)(ii). The defendant's presence is required at "the arraignment, at every stage of the trial including the empaneling of the jury and the return of the verdict, and at the imposition of sentence." CrR 3.4(a). The defendant's presence is also required where the court orders him to appear. *State v. Branstetter*, 85 Wn. App. 123, 128-29, 935 P.2d 620 (1997). CrR 3.3(c)(2)(ii) states:

> Failure to Appear. The failure of the defendant to appear for any proceeding at which the defendant's presence was required. The new commencement date shall be the date of the defendant's next appearance.

Mr. Klindworth contends that his time for trial rights were violated when the trial court issued a bench warrant on July 17, 2007. He claims he appeared for court, but was in the wrong courtroom. On July 18, 2007, after being arrested the day before for failing to appear, he told the court, "We were delayed in getting there. I was late, but I was there

5

for a long time. I was in the wrong courtroom .... And anyway I didn't intend to do anything wrong." RP (July 18, 2007) at 3-4. Mr. Klindworth contends the speedy trial time period expired on August 20, 2007, based on a commencement date of May 22, 2007. He argues "[w]hen the trial court reset Mr. Klindworth's trial date to October 3, 2007 it violated CrR 3.3." Br. of Appellant at 25.

The record undermines Mr. Klindworth's claim. Mr. Klindworth was arraigned on March 20, 2007. After Mr. Klindworth failed to appear for a scheduled court date on May 15, 2007, the court rescheduled the court date for July 17, 2007. Mr. Klindworth failed to appear on July 17, 2007. The judge noted that witnesses were present and that he waited close to one hour for Mr. Klindworth to appear. After Mr. Klindworth failed to appear, the court struck the court date and issued a bench warrant. The court scheduled the next trial date for October 3, 2007.

The trial court did not violate Mr. Klindworth's speedy trial rights when it reset the trial date to October 3, 2007. Washington law is well settled that a failure to appear, even if inadvertent, resets the commencement date of speedy trial. *State v. Wachter*, 71 Wn. App. 80, 856 P.2d 732 (1993) (trial court correctly reset time for trial when the defendant inadvertently failed to appear when her case was called). Our Supreme Court has explained:

> [T]he "failure to appear" provision is intended to apply to a defendant who thwarts the government's attempt to provide a trial within the time limits specified under the rule by absenting himself from a proceeding. Thus, the phrase "failure to appear" refers to a defendant's unexcused absence from a court proceeding. A defendant who negligently or even inadvertently fails to appear when required to do so forfeits the right to a trial within the statutory time-for-trial period, even if the defendant has not deliberately or intentionally absconded.

*State v. George*, 160 Wn.2d 727, 739, 158 P.3d 1169 (2007).

Mr. Klindworth's failure to appear on July 17, 2007, even if inadvertent, as he claims, reset the speedy trial clock. There was no speedy trial violation.

Mr. Klindworth next contends that he was not properly notified of an October 2, 2007 court date in violation of LCrR 3.2(a). He claims that the court did not mail notice to him until September 28, 2007. Citing CR 6(a), which excludes weekends from computing the period of time, he contends his notice was inadequate. He also contests that he received oral notice on September 26, 2007, from a court administrator.

LCrR 3.2(a) provides:

> Defendants on bail or recognizance are expected to be available for non-scheduled appearances upon seventy-two hours notice to defendant or defendant's attorney. They are expected to be present and on time at all scheduled appearances concerning which they have received either oral or written notice.

The record contradicts Mr. Klindworth's claim. Patricia Austin, the Franklin County Superior Court Administrator, stated that she called Mr. Klindworth on

7

September 26, 2007, and informed him of the October 2, 2007 court date. This provided timely notice to Mr. Klindworth. His failure to appear reset the speedy trial clock.

Mr. Klindworth next asserts that a "final violation occurred during the period April 5, 2011 to July 20, 2011." Br. of Appellant at 29. He claims that after he appeared on April 5, 2011, the court failed to set a new court date and there is no indication the trial court complied with CrR 3.3(d)(2) after Mr. Klindworth's appearance on April 5, 2011. He maintains that the record does not reflect that any notice was mailed regarding an April 20, 2011 court date.

Initially, we note that Mr. Klindworth fails to provide an adequate record to support his claim. He asserts that a hearing occurred on April 20, 2011, and that he did not get notice of this court date, but fails to designate as part of the record on appeal the April 20, 2011 hearing, contrary to RAP 9.1. Mr. Klindworth's only reference to the record regarding this portion of his argument is to a "Notice of Issue and Note for Motion Docket," filed on April 20, 2011, indicating that on April 19, 2011, the State set a new hearing date for May 20, 2011. Clerk's Papers (CP) at 427.

The appellant has the burden of complying with the rules and presenting a record adequate for review on appeal. *In re Marriage of Haugh*, 58 Wn. App. 1, 6, 790 P.2d 1266 (1990). Failure to provide an adequate record precludes appellate review. *Olmsted*

8

*v. Mulder*, 72 Wn. App. 169, 183, 863 P.2d 1355 (1993). Here, in the absence of a transcription of the April 20, 2011 hearing, we are unable to address what occurred on that date or the merits of Mr. Klindworth's claim.

However, to the extent we can address the issue without a complete record, Mr. Klindworth's claim fails. In his statement of facts, Mr. Klindworth notes that a hearing scheduled for April 12, 2011, was continued because he filed an affidavit of prejudice. He then notes that the next court date was May 20, 2011, and that he did not appear. The record before us supports this version of the facts. The record shows that Mr. Klindworth appeared for court on April 5, 2011, after arrest on a bench warrant that was issued in December 2010. The court set the next court date for April 12, 2011. On April 12, 2011, the case was continued because Mr. Klindworth filed an affidavit of prejudice against the assigned judge. On April 19, 2011, the court reset the hearing date for May 20, 2011. The note for motion docket stated, "Karla Kane, attorney for the defendant **will provide notice to defendant**." CP at 427. Mr. Klindworth did not appear on May 20, 2011. As indicated, the note for the motion indicates that Ms. Kane was instructed to give Mr. Klindworth notice of the date. Nevertheless, Mr. Klindworth did not reappear until May 23, 2011, which reset the commencement date. Mr. Klindworth's rule-based speedy trial right was not violated.

*Violation of Constitutional Speedy Trial Rights.* Mr. Klindworth also argues that the trial court violated his right to a speedy trial under the Sixth Amendment and article I, section 22 of the Washington Constitution. His argument fails under the facts of this case.

Both the United States Constitution and the Washington Constitution provide a criminal defendant with the right to a speedy public trial. U.S. CONST. amend. VI; CONST. art. I, § 22. Our state constitution "requires a method of analysis substantially the same as the federal Sixth Amendment analysis and does not afford a defendant greater speedy trial rights." *State v. Iniguez*, 167 Wn.2d 273, 290, 217 P.3d 768 (2009). We review de novo constitutional speedy trial claims. *Id.* at 280.

Any "inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular context of the case." *Barker v. Wingo*, 407 U.S. 514, 522, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972); *see State v. Ollivier*, 178 Wn.2d 813, 826-27, 312 P.3d 1 (2013). Because some delay is both necessary and inevitable, the appellant bears the burden of demonstrating that the delay between the initial accusation and the trial has crossed a line between ordinary and unreasonable to create a "presumptively prejudicial" delay. *Iniguez*, 167 Wn.2d at 283. Once this showing is made, courts must consider several nonexclusive factors in order to demonstrate whether the appellant's constitutional speedy

trial rights were violated. *Id.* These factors include the length and reason for the delay, whether the defendant has asserted his right, and prejudice to the defendant. *Id.*

Here, there was over a 50 month delay between arraignment and trial. This time period is more than sufficient to meet the defendant's initial burden. *Id.* at 291-92. Mr. Klindworth meets his burden of showing presumptive prejudice. Therefore, it is necessary to turn to the *Barker* factors to determine if the constitutional guarantee was violated.

The first factor is the length of the delay. Unlike the presumptive prejudice inquiry, this factor requires us to consider the length of time beyond that which triggers a *Barker* inquiry. Specifically, the concern is the difference between the time necessary to prepare for trial and the time the case is actually tried. As a relatively simple DUI case, this matter should have been fairly easy to prepare for trial. This factor weighs in Mr. Klindworth's favor. *Iniguez*, 167 Wn.2d at 292.

The second factor is the reason for the delay; this factor looks to the comparative contributions of the parties to the delay. *Id.* at 294. While some of the responsibility for the delay is attributable to the State, the vast bulk of the delay is overwhelmingly attributable to Mr. Klindworth. By Mr. Klindworth's own account, he failed to appear for court on many occasions. In his brief, Mr. Klindworth concedes the following missed

11

court dates: May 15, 2007; July 17, 2007; October 2, 2007; March 17, 2009; May 29, 2009; September 18, 2009; October 22, 2009; June 23, 2010; September 9, 2010; December 10, 2010; and May 20, 2011. These frequent failures to appear resulted in numerous delays and resetting of court dates. Moreover, he was on bench warrant status between September 2010 and April 2011.

Additionally, a substantial part of the delay is attributable to Mr. Klindworth's request for continuances. At a pretrial hearing on December 4, 2007, Mr. Klindworth requested a continuance to hire an attorney. At the next court appearance, Mr. Klindworth appeared without an attorney. On January 9, 2008, Mr. Klindworth appeared for trial, but was not prepared. Trial was rescheduled at his request. On April 28, 2009, Mr. Klindworth, through counsel, requested another continuance. Delays caused by defense counsel are also attributed to the defendant because the attorney is acting on the defendant's behalf. *Vermont v. Brillon*, 556 U.S. 81, 90-91, 129 S. Ct. 1283, 173 L. Ed. 2d 231 (2009); *see State v. Campbell*, 103 Wn.2d 1, 15, 691 P.2d 929 (1984).

Since the delays in this case are significantly the responsibility of Mr. Klindworth, this factor weighs heavily in favor of the State.

The third factor is whether Mr. Klindworth has asserted his right to a speedy trial. *Iniguez*, 167 Wn.2d at 294-95. This factor favors Mr. Klindworth. He raised speedy trial

issues on multiple occasions during the five years between arraignment and trial.

The final factor is whether the defendant was prejudiced by the delay. *Id.* at 295. Our Supreme Court recently held that "[a] defendant . . . must establish actual prejudice before a violation of the constitutional right to a speedy trial will be recognized." *Ollivier*, 178 Wn.2d at 840. Mr. Klindworth fails to articulate a sound case for prejudice. He concedes that he "was not incarcerated at all times during the critical period." Br. of Appellant at 34. The crux of his argument seems to be that he was not appointed an attorney until nine days before trial, which impaired his ability to prepare a defense.

Mr. Klindworth ignores the fact that he was not appointed counsel until just before trial because he had been asserting his right to proceed pro se. In fact, one of the issues on appeal is that the court appointed defense counsel over his objection. He also fails to identify how late appointment of counsel prejudiced his defense. There is no indication his ability to present a defense was hindered by the passage of time. This factor weighs in favor of the State.

On balance, the *Barker* factors favor the State. While the lengthy delay favors Mr. Klindworth, his significant contribution to the delay and the absence of prejudice all weigh against his position. Mr. Klindworth's constitutional speedy trial right was not violated.

13

*Right to Present a Defense.* Mr. Klindworth next contends that the trial court denied him his right to present a defense by preventing him from challenging the blood test results and fully cross-examining Sergeant Dickenson. He contends, "[t]he critical aspect of [his] defense was the attack of the blood test results and the denial of his ability to have independent tests conducted." Br. of Appellant at 35. He contends the trial court should have suppressed the blood test results because he was denied the opportunity to have the third blood vial tested. Specifically, he claims the arresting officer was under a duty pursuant to RCW 46.20.308(2) and RCW 46.61.506(6) to inform him that the hospital would only keep the vial for one week and that the arresting officer should have taken the third sample and preserved it. He also maintains that "a full cross-examination of [Sergeant] Dickenson could have impacted the trial court's decision in denying the CrR 3.6 motion as to the blood tests." Br. of Appellant at 36. His arguments fail.

First, the State was under no obligation to cover the expenses or otherwise assist in the procurement of additional blood tests for Mr. Klindworth. *Gonzales v. Dep't of Licensing,* 112 Wn.2d 890, 899, 774 P.2d 1187 (1989). "While the State must afford a [DUI] suspect a reasonable opportunity, under the circumstances, to obtain additional tests, this does not require the State to administer additional tests." *State v. McNichols,* 128 Wn.2d 242, 249, 906 P.2d 329 (1995) (citations omitted) (citing *State v. Stannard,*

109 Wn.2d 29, 36, 742 P.2d 1244 (1987)). Furthermore, the State is under no duty to assist the accused in obtaining exculpatory evidence. *McNichols*, 128 Wn.2d at 249.

RCW 46.20.308(2) instructs the officer administering an alcohol or drug test to inform the DUI suspect of his or her rights under the statute. The implied consent statute also gives the driver the right to undergo additional tests of his or her own choosing after he or she has either taken or refused the police administered test. RCW 46.20.308(2). RCW 46.20.308(2) states in relevant part, "The officer shall inform the person of his or her right . . . to have additional tests administered by any qualified person of his or her choosing as provided in RCW 46.61.506." RCW 46.61.506(6) states:

> The person tested may have a physician, or a qualified technician, chemist, registered nurse, or other qualified person of his or her own choosing administer one or more tests in addition to any administered at the direction of a law enforcement officer. The test will be admissible if the person establishes the general acceptability of the testing technique or method. The failure or inability to obtain an additional test by a person shall not preclude the admission of evidence relating to the test or tests taken at the direction of a law enforcement officer.

The court denied Mr. Klindworth's motion to suppress the blood test results, finding that Mr. Klindworth was given ample opportunity to make arrangements for his own blood draw and that he failed to take the steps necessary to have it preserved. The court did not err. The record establishes that Sergeant Dickenson read Mr. Klindworth his implied consent warning numerous times. The sergeant explained that he eventually

15

transported Mr. Klindworth to a hospital for a blood draw where a third vial was drawn, at Mr. Klindworth's request. Sergeant Dickenson took two vials and left the third vial with hospital staff. Under well-established law, Sergeant Dickenson had no affirmative duty to assist Mr. Klindworth in obtaining an independent test of the third blood vial.

In a related assignment of error, Mr. Klindworth asserts that the trial court prevented him from presenting a defense regarding the flaws in the blood evidence because it forced him to proceed to the CrR 3.6 hearing unprepared. The Sixth Amendment guarantees criminal defendants the right to present a defense. *State v. Jones*, 168 Wn.2d 713, 719-20, 230 P.3d 576 (2010). We may review de novo an alleged denial of the Sixth Amendment right to present a defense, but only if the defendant's need to present the evidence outweighs the State's interest in precluding the evidence. *Id.* at 720 (quoting *State v. Darden*, 145 Wn.2d 612, 622, 41 P.3d 1189 (2002)).

Relying on *Jones*, Mr. Klindworth complains that the court's refusal to continue the CrR 3.6 hearing so that Mr. Klindworth could obtain his notes and legal materials, resulted in compromising his ability to fully examine Sergeant Dickenson and adequately challenge the State's blood evidence. However, *Jones* does not help him. In that case, the issue was whether the trial court violated the defendant's right to present a defense by refusing to let him testify or introduce evidence regarding the circumstances of the

charged rape. *Jones*, 168 Wn.2d at 719-20. Here, unlike the defendant in *Jones*, Mr. Klindworth was not prevented from admitting any evidence or examining witnesses. In fact, he was given multiple opportunities to question Sergeant Dickenson.

For example, on March 23, 2010, Mr. Klindworth asked to represent himself and argue several motions, including a challenge to the admissibility of the blood draw evidence. He stated that he needed until the middle of June to prepare his motions. The court accommodated him and scheduled a pretrial hearing for June 23, 2010. Mr. Klindworth did not appear for the scheduled hearing. At the next scheduled hearing on August 17, 2010, Mr. Klindworth started questioning Sergeant Dickenson, but the hearing had to be continued to September 9, 2010, due to a mechanical failure of the stenographic machine. Mr. Klindworth indicated that he was aware of the new court date, but did not appear on September 9, 2010. Mr. Klindworth disappeared until April 5, 2011. A new court date was scheduled for May 20, 2011. Mr. Klindworth failed to appear again on May 20, 2011.

On July 8, 2011, the date finally set for Mr. Klindworth's suppression motion, Mr. Klindworth initially indicated that he wanted to proceed with the hearing. Sergeant Dickenson was present. However, shortly into the hearing, Mr. Klindworth reversed his position and informed the court that he was not prepared to continue his questioning of

17

Sergeant Dickenson due to his inability to access his notes while he was incarcerated. The court noted that Sergeant Dickenson was present and pointed out that this was Mr. Klindworth's chance to finally complete his cross-examination of the sergeant. Mr. Klindworth refused and the court excused Sergeant Dickenson.

Mr. Klindworth had multiple opportunities to cross-examine Sergeant Dickenson. Ultimately, his inability to do so was based on his failure to appear for scheduled court hearings and his refusal to proceed with the CrR 3.6 hearing and finish his questioning of Sergeant Dickenson. The trial court did not deny Mr. Klindworth the opportunity to challenge the blood evidence or present a defense.

*Right to Remain Silent.* Next, Mr. Klindworth contends that the prosecutor violated his right to remain silent by eliciting testimony from Sergeant Dickenson that Mr. Klindworth refused to cooperate with a DUI investigation.

The Fifth Amendment to the United States Constitution states that "[no] person . . . shall be compelled in any criminal case to be a witness against himself." Article I, section 9 of the Washington Constitution states that "[no] person shall be compelled in any criminal case to give evidence against himself." Both provisions guarantee a defendant the right to be free from self-incrimination, including the right to silence. *State v. Knapp*, 148 Wn. App. 414, 420, 199 P.3d 505 (2009). The State violates this right

when it uses the defendant's constitutionally permitted silence as substantive evidence of guilt. *State v. Burke*, 163 Wn.2d 204, 217, 181 P.3d 1 (2008). This means the State cannot elicit comments from witnesses or make closing arguments that infer guilt from the defendant's silence. *State v. Easter*, 130 Wn.2d 228, 236, 922 P.2d 1285 (1996).

Eliciting testimony about and commenting on a suspect's postarrest silence or partial silence is constitutional error and subject to our stringent constitutional error standard. *Id.* at 236-37. Under this standard, we presume constitutional errors are harmful and reverse and remand for a new trial unless the State meets the heavy burden of establishing that the constitutional error was harmless beyond a reasonable doubt. *Id.* at 242. A constitutional error is harmless beyond a reasonable doubt only if the evidence is so overwhelming that any rational trier of fact would necessarily have found the defendant guilty. *Id.*

A "comment" involves use of silence either as substantive evidence of guilt or to suggest that the defendant's silence was an admission of guilt. *State v. Lewis*, 130 Wn.2d 700, 707, 927 P.2d 235 (1996). Here, the prosecutor questioned Sergeant Dickenson as follows:

> Q. Okay, Sergeant Dickenson, I'm handing you State's Identification 8 (indicating). Do you recognize it?
> A. Yes. This is the portion of the constitutional rights in the DUI packet.

19

Q. Was this form filled out during the course of your investigation for this case?

A. Yes, it was.

Q. Are those the same or substantially the same rights that you just read from your <u>Miranda</u> card?

A. Yes.

Q. Did the defendant sign indicating that he understood those rights?

A. He did.

. . . .

Q. Is this portion of your investigation voluntary?

A. Yes.

Q. Did the defendant agree to do the DUI interview with you?

A. I believe he didn't. I'd have to look at my form.

RP (Vol. VI of VI) at 929. After a few more questions, Sergeant Dickenson confirmed that Mr. Klindworth refused the interview. Defense counsel did not object to the questioning and the matter was not mentioned again.

In the context of the trial, the single reference to Mr. Klindworth's failure to cooperate with the DUI interview was elicited to show that after his arrest, he was irritable, uncooperative, and exhibiting the effects of methamphetamine use. The prosecutor did not at any point during trial invite the jury to use Mr. Klindworth's failure to cooperate with the DUI interview as substantive evidence of guilt or suggest that guilt could be inferred from silence. A statement will not be considered a comment on the right to remain silent, if "'standing alone, [it] was so subtle and so brief that [it] did not naturally and necessarily emphasize defendant's testimonial silence.'" *Burke*, 163 Wn.2d

20

at 216 (internal quotation marks omitted) (quoting *State v. Crane*, 116 Wn.2d 315, 331, 804 P.2d 10 (1991)). A mere reference to silence is not reversible error absent a showing of prejudice. *Burke*, 163 Wn.2d at 216.

However, even if we assume that Sergeant Dickenson's testimony constituted an impermissible comment on Mr. Klindworth's right to remain silent, the error was harmless under the constitutional error standard. The untainted evidence of guilt is overwhelming. Specifically, as detailed above, Sergeant Dickenson testified that Mr. Klindworth was driving dangerously, speeding and then slowing down, stopping in front of the patrol car and then veering over the fog line. The car smelled of methamphetamine, and Mr. Klindworth's behavior was consistent with methamphetamine use. A blood draw revealed the presence of methamphetamine in Mr. Klindworth's system.

In light of this overwhelming evidence demonstrating Mr. Klindworth's guilt, any rational trier of fact would necessarily have found Mr. Klindworth guilty of driving while under the influence of drugs. Accordingly, any error related to an improper comment on Mr. Klindworth's postarrest silence was harmless beyond a reasonable doubt.

*Right to Self-Representation.* Mr. Klindworth next contends that the trial court erred by denying his request to proceed pro se. He contends the trial court forced him to

21

be represented by appointed defense counsel, Karla Kane, over his objection. He further maintains that the breakdown in communication between him and Ms. Kane violated his effective right to counsel.

We review the trial court's denial of a request for self-representation for an abuse of discretion. *State v. Madsen*, 168 Wn.2d 496, 504, 229 P.3d 714 (2010). A trial court abuses its discretion when its decision is manifestly unreasonable or is based on untenable grounds. *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003) (quoting *State v. Blackwell*, 120 Wn.2d 822, 830, 845 P.2d 1017 (1993)).

Criminal defendants have a constitutional right to waive the assistance of counsel and represent themselves at trial. *Faretta v. California*, 422 U.S. 806, 819-20, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975); *State v. Barker*, 75 Wn. App. 236, 238, 881 P.2d 1051 (1994). An unjustified denial of this right requires a new trial. *Madsen*, 168 Wn.2d at 503 (quoting *State v. Stenson*, 132 Wn.2d 668, 737, 940 P.2d 1239 (1997)); *State v. Breedlove*, 79 Wn. App. 101, 111, 900 P.2d 586 (1995). The court must indulge in every reasonable presumption against the defendant's waiver of right to counsel. *In re Det. of Turay*, 139 Wn.2d 379, 396, 986 P.2d 790 (1999) (quoting *Brewer v. Williams*, 430 U.S. 387, 404, 97 S. Ct. 1232, 51 L. Ed. 2d 424 (1977)).

The right to self-representation, however, is not absolute. *State v. DeWeese*, 117

Wn.2d 369, 375-76, 816 P.2d 1 (1991). As a threshold matter, the defendant's request to proceed pro se must be both timely and unequivocal. *Stenson*, 132 Wn.2d at 737. Where a defendant's request for self-representation is untimely, "the right is relinquished and the matter of the defendant's representation is left to the discretion of the trial judge." *DeWeese*, 117 Wn.2d at 377.

Mr. Klindworth's request to proceed pro se was neither timely nor unequivocal. On July 8, 2011, Mr. Klindworth asked to proceed with the CrR 3.6 hearing without the benefit of standby counsel. Later in the hearing, he indicated he wanted standby counsel and refused to argue the motion without legal counsel present. The court reminded Mr. Klindworth that it had advised him one year ago that he was being foolish by representing himself. Mr. Klindworth repeated his desire to have legal counsel. The court denied the request, noting "you've asked for lawyers on multiple occasions, and then you've asked they be discharged on multiple occasions, and I see this as simply another ploy on your part." RP (Vol. IV of VI) at 741.

On July 12, 2011, Mr. Klindworth asked for an attorney to represent him at trial scheduled for July 20, 2011. The court appointed Karla Kane. Mr. Klindworth responded, "I will not work with Karla. . . . Our differences are irretrievable, and if forced to, I need to continue on to trial on my own because we've had differences that I

23

don't want to discuss in open court that would . . . undermine my entire defense." RP

(Vol. V of VI) at 806. The court responded, "Ms. Kane is your attorney right now. If you

wish to renew your request to represent yourself at time of trial, on July 20th you can

bring that up to the court." RP (Vol. V of VI) at 807.

> On July 19, 2011, Ms. Kane advised the court:

> Your Honor, at this point Mr. Klindworth does feel he is bound to proceed
> with me as his attorney. His tactic of defending the case would have
> been—is severely different than mine in terms of part of the differences as
> to why I had asked the court to not appoint me last week.
> But at this point he feels like in order to get his trial underway, he
> has to proceed with me because he obviously didn't—since he felt like your
> Honor was appointing me and that the issue was closed, that he is not
> prepared and hasn't subpoenaed witnesses that he would have wanted, etc.,
> for trial tomorrow.
> So, at this point I am proceeding forward as his attorney.

RP (Vol. V of VI) at 820-21.

When the State voiced concerns that Mr. Klindworth had a right to

represent himself, the court responded:

> From my perspective, he didn't—he never wanted to proceed pro se. He
> just didn't want Karla Kane as his attorney, and he doesn't have a choice to
> choose his attorney. That's why the court ruled the way it did. Then he
> brings it up eight days before trial, which under those circumstances could
> only be characterized as efforts to undermine the process.

RP (Vol. V of VI) at 821-22.

The right to represent oneself does not encompass a right to choose a particular

advocate. *State v. Schaller*, 143 Wn. App. 258, 267, 177 P.3d 1139 (2007). Moreover, a

pro se request made in the context of expressing displeasure with one's counsel often

indicates that the request is equivocal. *State v. Woods*, 143 Wn.2d 561, 587, 23 P.3d

1046 (2001). In *Woods*, the defendant stated that:

> "I will be prepared to proceed with—with this matter here without counsel
> come October.
>
> . . . .
>
> I've already consented to one continuance, Your Honor. And they—they
> have done nothing but grossly misuse that time."

*Id.* The court found that this was not an unequivocal request, but an expression of the

defendant's displeasure with his counsel's motion to continue his trial. *Id.*

Mr. Klindworth's request was likewise equivocal. The overall purpose of his

exchanges with the court was to express displeasure with appointed defense counsel and

to obtain new counsel. Moreover, on the day of trial, he did not renew his request to be

pro se. Considering Mr. Klindworth's statements in context and applying the

presumption against waiver of right to counsel, his request was equivocal.

Additionally, a trial court may terminate pro se status if a defendant "deliberately

engages in serious and obstructionist misconduct." *Faretta*, 422 U.S. at 834 n.46; *see*

*also Madsen*, 168 Wn.2d at 509 n.4 ("if a defendant is sufficiently disruptive or if delay

becomes the chief motive"). Here, the trial court based its decision on its finding that Mr. Klindworth was undermining and delaying proceedings. As just detailed, the record amply supports the court's finding, establishing repeated disruptions by Mr. Klindworth and repeated admonitions by the court. The trial court did not abuse its discretion in denying Mr. Klindworth's request to proceed without counsel.

*Denial of Motion to Dismiss.* Mr. Klindworth contends that the trial court abused its discretion in denying his motion to dismiss under CrR 8.3(b) for mismanagement. He argues that the "notification procedures utilized by the State in this case constitute mismanagement," which resulted in substantial prejudice to Mr. Klindworth, including incarceration on several occasions. Br. of Appellant at 45.

CrR 8.3(b) states:

> The court, in the furtherance of justice, after notice and hearing, may
> dismiss any criminal prosecution due to arbitrary action or governmental
> misconduct when there has been prejudice to the rights of the accused
> which materially affect the accused's right to a fair trial. The court shall set
> forth its reasons in a written order.

Before a trial court may dismiss charges under CrR 8.3(b), the defendant must show by a preponderance of the evidence (1) arbitrary action or governmental misconduct and (2) prejudice affecting the defendant's right to a fair trial. *Rohrich*, 149 Wn.2d at 654. The governmental misconduct need not be evil or dishonest; simple mismanagement

is sufficient. *Blackwell*, 120 Wn.2d at 831. And, the defendant must show actual prejudice, not merely speculative prejudice affecting his right to a fair trial. *Rohrich*, 149 Wn.2d at 657. Dismissing charges under CrR 8.3(b) is an extraordinary remedy and is limited to truly egregious cases of mismanagement. *State v. Wilson*, 149 Wn.2d 1, 9, 65 P.3d 657 (2003) (quoting *State v. Duggins*, 68 Wn. App. 396, 401, 844 P.2d 441, *aff'd*, 121 Wn.2d 524, 852 P.2d 294 (1993)). We review a trial court's decision denying a motion to dismiss under CrR 8.3 for an abuse of discretion. *Blackwell*, 120 Wn.2d at 830.

In December 2009, Mr. Klindworth filed a CrR 8.3 motion to dismiss, alleging his case had been mismanaged by the prosecutor, court administration, and the clerk's office. He claimed that he was not given notice of court dates and that when he showed up for court, the date would be reset. He claimed that the resulting delays prejudiced his trial because a witness had died during this time and his speedy trial rights were violated.

The court denied Mr. Klindworth's motion, finding that Mr. Klindworth had been advised of court dates and that his failures to appear were unexcused. The court also noted that most of the delays were attributable to Mr. Klindworth, pointing out that Mr. Klindworth filed approximately 10 motions in July 2010, but failed to note any of them for the motion docket. The court also found that Mr. Klindworth was not credible and that he failed to support his contentions with supporting documents.

Mr. Klindworth fails to explain how the court abused its discretion. Mr. Klindworth does not specify which "notification procedures" prejudiced him or point to any evidence in the record to support his claim. In view of Mr. Klindworth's multiple unexcused failures to appear for court, failure to support his arguments with supporting documentation, and failure to establish actual prejudice, the trial court did not abuse its discretion in denying his motion.

*Imposition of Interlock Requirement.* Finally, Mr. Klindworth contends that the trial court erred in imposing an ignition interlock device requirement at sentencing. This contention is without merit. The court did not impose an ignition interlock requirement.

*SAG Issues.* Mr. Klindworth raises a number of additional grounds in his SAG. He contends his speedy trial rights were violated, the prosecutor failed to release exculpatory evidence, the prosecutor released slanderous information to the Tri-City Herald to create negative pretrial publicity, the procedure for gathering an independent blood test was flawed, willful court misconduct and wrongful incarceration hampered his ability to present a defense, the removal of defense counsel added one year to the pretrial process, denial of public funds for his defense, and the court's instruction that the jury was not to be told that Mr. Klindworth spent months in jail before trial denied him a fair trial.

28

None of these claims are properly before us. Several of his alleged errors have been addressed by counsel and are, therefore, not matters for his SAG. These include issues related to speedy trial violations, the blood test, and violation of his right to present a defense. RAP 10.10(a) permits an appellant to file a pro se statement of additional grounds "to identify and discuss those matters which the defendant/appellant believes have not been adequately addressed by the brief filed by the defendant/appellant's counsel."

The remaining claims either involve matters outside the record, *State v. McFarland*, 127 Wn.2d 322, 335, 338 n.5, 899 P.2d 1251 (1995) (matters outside record must be raised in personal restraint petition), were not raised at trial, or are insufficiently argued. Although RAP 10.10(c) states that reference to the record and citation to authorities are not required in statements of additional grounds for review, the rule also states that the appellate court will not consider the SAG for review if it does not inform the court of the nature and occurrence of the alleged errors. Here, Mr. Klindworth fails to cite to record or adequately describe the nature and occurrence of any alleged errors as required by RAP 10.10(c). We are not obligated to search the record in support of SAG claims. Additionally, several claims would require us to consider affidavits and other evidence outside the record below and on appeal. If Mr. Klindworth wishes to raise

No. 30226-1-III
*State v. Klindworth*

issues of facts and evidence outside the record, he must raise them in a personal restraint petition. *McFarland*, 127 Wn.2d at 335.

We affirm the trial court.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Price, J.P.T.

WE CONCUR:

_____
Korsmo, J.

_____
Siddoway, C.J.

30