IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No.  39687-8-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KENNETH J. NELSON, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

STAAB, A.C.J. — Kenneth Nelson appeals from his felony convictions raising three arguments: (1) the trial court violated his CrR 3.3 time-for-trial rights by failing to schedule a trial date at his arraignment, (2) the trial court violated his constitutional right to a speedy trial, and (3) his appointed counsel was ineffective for failing to object to the alleged CrR 3.3 and time-for-trial violations.  Nelson also submitted a lengthy statement of additional grounds for review (SAG) raising numerous additional issues.

We conclude that Nelson waived any rule-based or constitutional objections to his trial setting and his attorney was not ineffective for failing to object on these grounds.

Of the issues raised in Nelson's SAG, the only one warranting relief is his request to strike the victim penalty assessment (VPA) due to recent changes in the law that apply

to his case. Accordingly, we affirm Nelson's convictions but remand with instructions

for the trial court to strike the VPA from his judgment and sentence.

BACKGROUND

On January 14, 2021, the State charged Kenneth Nelson with first degree burglary

while armed with a deadly weapon, theft of a firearm, first degree unlawful possession of

a firearm, second degree theft, two counts of possession of a controlled substance,

making or having burglar tools, and obstructing a law enforcement officer. That same

day, the trial court appointed counsel to represent Nelson. Due to Nelson's lengthy

criminal history, the court ordered him held on bond. He was arraigned one week later,

on January 25. At defense counsel's request, the omnibus and other hearings were

continued several times without setting a trial date. On March 15, the State amended the

charges to first degree burglary while armed with a deadly weapon, theft of a firearm,

first degree unlawful possession of a firearm, second degree theft, possession of drug

paraphernalia, making or having burglar tools, and obstructing a law enforcement officer.

On August 16, the court set a trial date for October 28. Over the next two years, trial was

continued numerous times.

Nelson's trial finally commenced on March 9, 2023. In the 773 days between

Nelson's arraignment and trial, the court held at least 25 hearings. During that time,

Nelson was assigned four attorneys who filed three suppression motions, two of them

partly successful. Except for two continuances requested by the State, all of the

continuances were requested by Nelson. At no point during the pendency of his case did

Nelson or his attorneys object to the trial setting, move to compel a timely trial, or move

to dismiss for violation of CrR 3.3 or his constitutional speedy trial rights.

Following trial, the jury found Nelson guilty on all charges and found that he was

armed with a firearm during the burglary.

Before sentencing, defense counsel moved to arrest judgment on the basis of

insufficient evidence of the firearm.[1] After a hearing on the motion, the court denied the

motion.

At sentencing, the court determined that Nelson had 23 prior convictions,

including 11 convictions out of Idaho, which put Nelson at the top of the standard

sentence range for each of his crimes. The court imposed a standard range sentence of

281 months.

Nelson timely appealed.

ANALYSIS

1. RULE-BASED SPEEDY TRIAL

Nelson contends the trial court violated CrR 3.3(d)(1) by failing to set a trial date

at or within 15 days of arraignment. Although the court set and continued the omnibus

hearing over several months, on appeal Nelson maintains that CrR 3.3(e)(3) excludes

---

[1] This motion and the trial court's ruling are discussed further when analyzing the SAG issues below.

periods of time only when a trial date has been set and continued to a date specific. He

argues that the rule does not exclude periods when no trial has been set. He asserts that

by the time the court set a trial date, the 60-day time-for-trial period had already expired.

He further argues that his obligation to object under the rule arose only once a trial date

was set. Because the time-for-trial period had lapsed by then, he contends the trial court

lost jurisdiction, allowing him to raise this issue for the first time on appeal. The State

argues that Nelson is precluded from raising the rule violation for the first time on appeal.

We agree that Nelson failed to preserve this rule-based challenge to his trial setting.

     A. *Failure to Preserve the Issue for Appeal under RAP 2.5(a)*

     We generally decline reviewing claims of error not raised in the trial court. RAP

2.5. However, an exception to that rule permits a party to raise a "manifest error

affecting a constitutional right" for the first time on appeal. RAP 2.5(a)(3). This

exception is narrow and "does not permit *all* asserted constitutional claims to be raised

for the first time on appeal." *State v. Kirkman*, 159 Wn.2d 918, 934, 155 P.3d 125 (2007)

(alteration in original). Rather, the asserted error must be "manifest," which "requires a

showing of actual prejudice." *Id*. at 935. To demonstrate actual prejudice, there must be

a plausible showing by the appellant "that the asserted error had practical and identifiable

consequences" during trial. *State v. WWJ Corp.*, 138 Wn.2d 595, 603, 980 P.2d 1257

(1999). The policy behind RAP 2.5 reflects the principle that errors should be addressed

4

when they arise, allowing the trial court to correct them and avoid unnecessary appeals or retrials. *State v. Scott*, 110 Wn.2d 682, 684-85, 757 P.2d 492 (1988).

CrR 3.3 violations "are not constitutionally based" and generally "cannot be raised for the first time on appeal." *State v. Smith*, 104 Wn.2d 497, 508, 707 P.2d 1306 (1985); *State v. MacNeven*, 173 Wn. App. 265, 268, 293 P.3d 1241 (2013); *State v. Chenoweth*, 115 Wn. App. 726, 739, 63 P.3d 834 (2003). Here, Nelson did not object to the trial court's alleged CrR 3.3 violation during any of the hearings, or move to dismiss for violations of the rule.

Despite the lack of objection, Nelson contends that he is still entitled to raise the objection on appeal since the trial court did not actually set a trial date until after the speedy trial period had expired, citing *State v. Walker*, 199 Wn.2d 796, 804, 513 P.3d 111 (2022). We disagree that *Walker* supports his argument.

In *Walker*, the court held that a motion to compel the court to set trial within the time for trial period under CrR 3.3(d)(3) was the only remedy available under this subsection. *Id*. at 801-02. The court noted, that if a court were to "fail[] to set a trial date at all, and the time-for-trial period expires, a defendant may still obtain dismissal under the rules." 199 Wn.2d at 804 (citing *State v. Raschka*, 124 Wn. App. 103, 106, 100 P.3d 339 (2004)).

In *State v. Raschka*, the defendant did not appear at a status conference hearing. 124 Wn. App. at 108. Instead of issuing a warrant, the prosecutor offered to submit

paperwork to set a new trial date but apparently lost track of the case until after the time-for-trial period had expired. *Id*. at 105-07. When the case was eventually set for trial, the defendant objected under CrR 3.3. *Id*. at 107. This court held that the defendant had no duty to object under the rule until the trial date was actually set. *Id*. at 111. At that point, it was too late to correct the violation and the only available remedy was dismissal. *Id*. 111-12.

Similarly, in *State v. Jenkins*, the prosecutor delayed setting the case for a trial scheduling hearing following a mistrial. 76 Wn. App. 378, 380-81, 884 P.2d 1356 (1994). By the time the parties reappeared in court, the time for trial period had already expired. *Id*. at 380-81. The trial court granted defendant's motion to dismiss and the dismissal was upheld on appeal. *Id*. at 381, 383-84. Similar to the holding in *Raschka*, the *Jenkins* court held that the defendant had no duty to object until trial was set and by that time the time for trial had already expired. *Id*. at 383-84.

While *Walker*,[2] *Raschka*,[3] and *Jenkins*[4] address when and how a defendant's duty to object arises under the rule, they do not help Nelson. In both *Raschka* and *Jenkins*, defense counsel preserved the rule-based violation by moving to dismiss before the trial

---

[2] 199 Wn.2d 796.
[3] 124 Wn. App. 103.
[4] 76 Wn. App. 378.

court. Here, Nelson did not object to any of his trial dates or move to dismiss before the trial court.

Alternatively, Nelson asserts that we should review his rule-based argument under RAP 2.5(a)(1). He contends that once the time for trial period expired, the trial court lost authority to try the case, citing *State v. Denton*, 23 Wn. App. 2d 437, 516 P.3d 422 (2022). We reject this argument for two reasons. First, in *Denton*, the defendant objected to the time for trial violation. *Id*. at 439. Second, losing authority to hear a case is not the same as losing jurisdiction. *Marley v. Dep't of Labor & Indus. of State*, 125 Wn.2d 533, 539, 886 P.2d 189 (1994) ("A court or agency does not lack subject matter jurisdiction solely because it may lack authority to enter a given order."). A time for trial violation is not self-executing, thereby immediately divesting the court of authority to continue presiding over the case. Instead, the rule provides that when a party fails to object and trial is set outside the time for trial allowed by the rule, the new trial date "shall be treated as the last allowable date for trial," subject to other provisions in the rule. CrR 3.3(d)(4).

Here, Nelson failed to preserve his argument that his trial was set in violation of CrR 3.3. He never objected, moved to compel a timely trial, or moved to dismiss before the trial court. Consequently, we decline to consider the issue for the first time on appeal.

2.    CONSTITUTIONAL SPEEDY TRIAL VIOLATION

Nelson argues that in addition to the violation of CrR 3.3, the delay in bringing

him to trial violated his state and federal constitutional rights to a speedy trial.  As a

threshold issue, the State again asserts that Nelson failed to preserve this issue for appeal

because he did not raise it in the trial court or argue that an exception to RAP 2.5 applies.

Alternatively, on the merits, the State contends that the trial court did not violate Nelson's

constitutional speedy trial rights.  We agree that Nelson failed to preserve this issue as

well, but we exercise our discretion to consider it.  RAP 2.5(a).

The Sixth Amendment to the United States Constitution and art. I, section 22 of

the Washington State Constitution protect a criminal defendant's right to a speedy trial.

The protections provided by each provision are substantially the same.  *State v. Ollivier*,

178 Wn.2d 813, 826, 312 P.3d 1 (2013).  We review constitutional challenges de novo.

*Id*.

A constitutional speedy trial challenge is separate from a CrR 3.3 violation.  *See*

*Id*. at 825-26.  To determine whether a constitutional speedy trial violation occurred,

courts apply the balancing test outlined in *Barker v. Wingo*,[5] by weighing the conduct and

culpability of both the State and the defendant.  *See State v. Iniguez*, 167 Wn.2d 273, 283,

217 P.3d 768 (2009).  To trigger the *Barker* analysis, the defendant must first show that

the delay "crossed a line from ordinary to presumptively prejudicial."  *Id*.  In assessing

whether a delay is presumptively prejudicial, courts consider factors such as case complexity, the length of delay, and reliance on eyewitness testimony. *Id*. at 292.

Once the defendant demonstrates the delay is presumptively prejudicial, we apply the *Barker* balancing test by examining (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his speedy trial right, and (4) prejudice to the defendant. *Id*. at 283-85, 293-95.

To determine whether Nelson's constitutional right to a speedy trial was violated, we must first assess whether the delay was presumptively prejudicial. Only then can we evaluate the remaining *Barker* factors.

We agree with the parties that the delay in this case was presumptively prejudicial. More than two years (773 days) passed between Nelson's arrest and his trial in a relatively straightforward burglary case that depended on witness testimony. This substantial delay satisfies the threshold for presumptive prejudice and triggers the *Barker* analysis.

    i.    *Length of Delay*

The first *Barker* factor does not simply revisit whether the delay was presumptively prejudicial. *Id*. at 293. Instead, it evaluates "'the extent to which the delay stretches beyond the bare minimum needed to trigger'" the *Barker* analysis. *Id.* (quoting *Doggett v. United States*, 505 U.S. 647, 652, 112 S. Ct. 2686, 120 L. Ed. 2d 520

---

[5] 407 U.S. 514, 529-30, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972).

(1992)). A longer pretrial delay compels this court to give a closer examination into the circumstances surrounding the delay. *Id.*

Nevertheless, courts have consistently held that delays longer than the one in this case were not exceptionally long, particularly when the delay was attributable to the defense. *Ollivier*, 178 Wn.2d at 828. In *Ollivier*, the Washington Supreme Court cited numerous cases where no speedy trial violation was found, even when the delays exceeded those at issue here, because the delays were primarily caused by the defendant or their counsel. *Id*. at 828-29.

Here, the delay significantly exceeds the minimum needed to trigger a *Barker* analysis. However, as discussed below, the majority of the delay resulted from defense requests and multiple substitutions of counsel. Consequently, while the length of delay warrants careful scrutiny, this factor weighs against Nelson.

ii.     *Reason for Delay*

This factor requires the court to examine each party's responsibility for the delay and weigh the reasons for it. *Iniguez*, 167 Wn.2d at 294.

Defense counsel requested nearly all of the continuances for reasons such as addressing issues Nelson wanted raised, reviewing additional discovery, preparing suppression motions, filing motions in limine, and recovering from illness. Further delays occurred when Nelson's second appointed attorney withdrew due to a conflict, and his third and fourth attorneys needed time to familiarize themselves with the case and file

10

additional pretrial motions, including suppression and ER 404(b) motions. In contrast,

the State requested only two continuances: one due to the prosecutor's involvement in

another trial and another due to witness unavailability.

Overall, the defense caused the vast majority of the delays. Under Washington

law, delays caused by defense counsel are attributed to the defendant, even if the

defendant objects. *Ollivier*, 178 Wn.2d at 832; *State v. Campbell*, 103 Wn.2d 1, 15, 691

P.2d 929 (1984). This factor weighs heavily against Nelson.

iii.     *Assertion of Right*

This factor requires the court to consider the extent to which the defendant

asserted his speedy trial right. *Iniguez*, 167 Wn.2d at 294-95. "Failure to assert the right

will make it difficult for a defendant to prove that he was denied a speedy trial." *Barker*,

407 U.S. at 532.

Nelson did not object to any continuances requested by his attorneys or the State,

even when the court specifically asked him. In fact, Nelson seemed to orally waive his

speedy trial rights on one occasion to allow his family time to speak with a new attorney.

As a result, his failure to assert his constitutional speedy trial rights weighs heavily

against him.

> iv.  *Prejudice*

This factor evaluates the prejudice caused by the delay, considering three interests: (1) preventing oppressive pretrial incarceration, (2) minimizing anxiety and worry, and (3) avoiding impairment of the defense.  *Iniguez*, 167 Wn.2d at 284.

Nelson concedes that the delay in this case "did not have an impact upon his defense."  Br. of Appellant at 53.  However, he provides no evidence of prejudice beyond a conclusory assertion that "the prejudice was the fact that the matter ever proceeded to a trial resulting in his conviction."  Br. of Appellant at 53.  He does not argue that his pretrial incarceration was oppressive, that the delay caused undue anxiety or worry, or that his defense was impaired (e.g., by fading memories or unavailable evidence).  *Barker*, 407 U.S. at 532.  Without a showing of prejudice, this factor weighs against Nelson.

Balancing the *Barker* factors, there was no constitutional violation of Nelson's right to a speedy trial.  The delay, while significant, was primarily caused by the defense, and Nelson failed to assert his right or demonstrate specific prejudice.  Accordingly, Nelson's constitutional speedy trial claim fails.

3.  INEFFECTIVE ASSISTANCE OF COUNSEL

Nelson argues that he received ineffective assistance of counsel because his appointed attorneys failed to address alleged violations of CrR 3.3 and his constitutional right to a speedy trial.  Specifically, Nelson claims his first counsel failed to object to the

12

trial court's omission of a trial date at arraignment and compounded the issue by repeatedly continuing the omnibus hearing. Nelson also asserts that his second counsel was confused about the time-for-trial rule. Finally, Nelson alleges his trial counsel was deficient for not raising prior violations of the time-for-trial rule or speedy trial rights. We conclude that Nelson has failed to show that any of his attorneys were constitutionally ineffective.

Criminal defendants have a constitutional right to effective assistance of counsel. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; *State v. Vazquez*, 198 Wn.2d 239, 247, 494 P.3d 424 (2021). When reviewing a claim of ineffective assistance of counsel, we start with a strong presumption that counsel's performance was effective. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). We review these types of claims de novo. *Vazquez*, 198 Wn.2d at 249.

Washington courts follow the *Strickland*[6] standard when determining whether a defendant received ineffective assistance of counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). A defendant bears the burden to show that (1) defense counsel's performance fell below an objective standard of reasonableness and, if so, (2) there is a reasonable probability that but for counsel's poor performance the outcome of the proceedings would have been different. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). If either element is not satisfied, the inquiry ends. *Id*.

When counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient. *Id*. at 863. To show deficient performance, the defendant must demonstrate from the record the absence of a legitimate strategic or tactical reason for counsel's conduct. *McFarland*, 127 Wn.2d at 335. "Prejudice exists if there is a reasonable probability that 'but for counsel's deficient performance, the outcome of the proceedings would have been different.'" *State v. Estes*, 188 Wn.2d 450, 458, 395 P.3d 1045 (2017) (quoting *Kyllo*, 166 Wn.2d at 862).

On appeal, Nelson claims his trial attorney was ineffective for failing to require strict compliance with the time-for-trial procedures under CrR 3.3. However, even if Nelson could show deficient performance, which we do not decide here, he cannot demonstrate prejudice. Nelson's argument presumes that if his trial attorney had said nothing while the trial court continued the omnibus hearing without setting a trial date, and then filed a motion to dismiss once the time for trial period had expired, then his case would have been dismissed.

This argument overlooks Nelson's active role in the court's decisions to set and continue hearings. Nelson requested the continuances, recommended that the court not set a trial date, and affirmed that the time for trial period was tolled by his requested continuances. There is no question that these continuances were necessary to give counsel time to prepare. While Nelson may not have been obligated to object to the trial

---

[6] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

date until one was set, he cannot invite the court to forego setting a trial date and then claim this violated CrR 3.3. *See Chenoweth*, 115 Wn. App. at 739 (defendant invited error by requesting continuances and later claiming they failed to toll the time for trial period); CrR 3.3(f)(2) (the bringing of a motion for continuance by a party waives that party's objection to the requested delay). Accordingly, Nelson fails to demonstrate that, had his trial attorney interpreted the rule to require a trial setting at arraignment and properly objected, the outcome of the proceedings would have been different. Thus, Nelson's claim of ineffective assistance of counsel fails.

4.   STATEMENT OF ADDITIONAL GROUNDS (SAG)

Nelson raises numerous issues in his SAG. We address them in turn, following a review of additional relevant facts and standards for our review of SAGs.

A. *Additional Facts*

Nelson's first appointed counsel moved to suppress evidence collected during the investigation, asserting that the *Terry*[7] stop was unlawful because the officer lacked reasonable suspicion to detain Nelson for burglary. At the suppression hearing on July 19, 2021, defense counsel vigorously objected to testimony from Sargent Boyd, the officer who arrested Nelson, citing hearsay concerns. The trial court overruled these

---

[7] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

15

objections, agreeing with the deputy prosecutor that the officer's statements were admissible under the "fellow officer rule."[8]  RP at 98.

After the hearing, the court emailed the parties with its decision denying the motion to suppress and directed the deputy prosecutor to prepare findings of fact and conclusions of law.  Subsequently, the court entered its findings, conclusion, and order on the suppression motion:

> 1.  Sometime after 7:30 p.m. on January 12, 2021, someone broke into an unattached shop located at 1321 McCarroll Street, Clarkston, Washington and stole several tools and other items of personal property, including a 9mm handgun.  The victim, Don Lee, contacted the police at approximately 8:30 a.m. the next morning to report the burglary.  Sgt. Darin Boyd took the report from Mr. Lee, assisted by Officer Alan Fowler.

> 2.  Mr. Lee reported seeing a male subject dressed in dark clothing in the alley in the area of the shop, just after he discovered the break-in.  Mr. Lee had not seen this person in the area before and the subject claimed to be looking for his lost dog, and claimed to live at the end of McCarroll Street.

> 3.  Sgt. Boyd was aware that the night before, the resident of 1278 Billups Street had called to report a prowler and a suspicious vehicle parked in the driveway of her residence.  This residence is within a couple hundred yards of Mr. Lee's residence.  The complainant had captured the prowler and vehicle on her "Ring" doorbell camera.

---

[8] The fellow officer rule provides "'that an arresting officer who does not personally possess sufficient information to constitute probable cause may still make a warrantless arrest . . . if he acts upon the direction or as a result of a communication from a fellow officer, and . . . the police, as a whole, possess sufficient information to constitute probable cause.'"  *State v. Maesse*, 29 Wn. App. 642, 646-47, 629 P.2d 1349 (1981).

4.  The vehicle, while registered to John Torrez, was known by law enforcement to be used by the Defendant. The vehicle had been identified in the area of a previous burglary in the fall of 2020. When police contacted Mr. Torrez and questioned him about it, he told police that the vehicle had been sold to the Defendant. The Defendant confirmed this when questioned about that burglary.

5.  Shortly after clearing from taking the report from Mr. Lee, Sgt. Boyd received a call for service from another nearby resident, Karen Lehfeldt, who stated that a male was walking up and down the alley, and walking around the back of a house looking in windows. The male was described as wearing a dark baseball cap and a dark hoodie sweatshirt, which was similar to the suspect description given by Mr. Lee. Sgt. Boyd responded to the alleyway between Billups and McCarroll Streets.

6.  Upon arrival, Sgt. Boyd immediately saw a male matching the description given by Mr. Lee and Ms. Lehfeldt. Sgt. Boyd stopped his patrol vehicle and exited along with Officer Fowler who was accompanying him. Sgt. Boyd did not have any lights or siren activated and had not otherwise given any signal or command to the subject. Sgt. Boyd approached the male subject and asked for his name, and the subject identified himself as the Defendant, Kenneth Nelson.

7.  Although Sgt. Boyd had not immediately recognized the Defendant, as soon [as] the Defendant identified himself, Sgt. Boyd knew who he was and was familiar with his prior criminal history which included burglary and burglary related crimes and convictions. Sgt. Boyd was aware that, in the last few years, the Defendant had been charged with several residential burglaries in Clarkston and adjoining Lewiston, Idaho and had been sentenced to prison on charges stemming therefrom. Sgt. Boyd had been involved in a search warrant executed in that investigation. He was anecdotally aware from other officers of other burglary investigations and cases involving the Defendant from before.

17

8. Sgt. Boyd was aware that a firearm had been taken during the burglary of Mr. Lee's shop and, based upon concern for his safety, gave the Defendant a command to turn around and place his hands behind his back for handcuffing and frisking. Rather than comply, the Defendant immediately ran and led officers on a short foot pursuit through private back yards and over the hood and roof of a vehicle.

9. At around the time of contact, dispatch had received a call back from the resident at 1278 Billups Street, who advised that the vehicle from the night before was back and the resident specifically gave the name of the Defendant. It is not clear whether Sgt. Boyd was aware of this call at the time he initially contacted the Defendant or became aware of the call after the foot chase. The time on the call records suggests that this information was received while officers were out with the Defendant.

Clerk's Papers at 134-36. Based on these findings, the trial court concluded that, under the totality of the circumstances, there was "ample information to support reasonable suspicion sufficient to justify a *Terry* detention of Defendant" and that, as a result, the evidence recovered from Nelson's person after his arrest was admissible at trial. CP at 136.

Around one year later, Nelson's trial counsel filed a motion to suppress the evidence collected from Nelson's car, arguing that the warrant failed to specify a crime under investigation and violated the requirement of identifying the things to be seized in the search. The court held a hearing on the motion and took it under advisement. The court later granted the motion to suppress and entered written findings and conclusions in support of its decision.

18

The jury ultimately found Nelson guilty of all charges, including first degree burglary while armed with a firearm, theft of a firearm, and first degree unlawful possession of a firearm. At the conclusion of trial, defense counsel informed the court that it would bring a motion for judgment notwithstanding the verdict.

Subsequently, defense counsel sent a memorandum supporting a CrR 7.4 motion to arrest judgment to the State and trial judge via email but failed to file the motion with the court. One of the arguments raised in the motion was that the State presented insufficient evidence to prove that Nelson took a firearm during the burglary.[9] Before sentencing, the court held a hearing on the CrR 7.4 motion. At the hearing's conclusion, the court orally denied the motion on two grounds. First, the court found that defense counsel failed to properly file and serve the written motion as required by the rule. Second, the court ruled on the merits, concluding that the evidence, when viewed in the light most favorable to the State, was sufficient to establish that a firearm was stolen during the burglary. Following the hearing, the court entered written findings of fact, conclusions of law, and an order denying the CrR 7.4 motion.

B. *SAG Standards*

A defendant may file a pro se SAG. RAP 10.10(a). However, there are several limitations to our review of a SAG. First, we generally consider only issues raised in a SAG that adequately inform us of the nature and occurrence of the alleged errors. *State*

*v. Alvarado*, 164 Wn.2d 556, 569, 192 P.3d 345 (2008). In addition, we only consider arguments that are not repetitive of briefing. RAP 10.10(a). Last, issues that involve facts or evidence not in the record are properly raised through a personal restraint petition, not a SAG. *Id*.

      C. *Nelson's Arguments that the Trial Court Abused its Discretion*

Nelson asserts the trial court abused its discretion by overruling his counsel's hearsay objections during the first suppression hearing. He also claims the trial court erred by considering Sargent Boyd's hearsay testimony admitted under the "fellow officer rule." Further, Nelson argues that Sargent Boyd's testimony constituted "governmental and prosecutorial misconduct" in violation of RCW 9A.72.080.[10] These arguments lack merit.

The rules of evidence do not apply in suppression hearings. *See* ER 1101(a); *see also State v. O'Cain*, 108 Wn. App. 542, 556, 31 P.3d 733 (2001) ("[H]earsay is admissible at a suppression hearing.") Thus, even if the trial court considered hearsay evidence, such consideration would not constitute an abuse of discretion. Accordingly, Nelson's claims of prosecutorial and governmental misconduct based on this alleged error also fail.

---

[9] Copies of this motion and memorandum in support are not in the record.

[10] This statute provides: "Every unqualified statement of that which one does not know to be true is equivalent to a statement of that which he or she knows to be false."

Nelson also challenges findings of fact 1 through 7 from the first suppression hearing.[11] He appears to argue the trial court abused its discretion by finding Sargent Boyd's testimony credible and relying on it. These challenges are without merit.

We review a trial court's denial of a suppression motion in two parts. *State v. Lohr*, 164 Wn. App. 414, 418, 263 P.3d 1287 (2011). First, we "determine whether substantial evidence supports the challenged findings of fact," and second, we evaluate "whether [those] findings support the trial court's conclusions of law." *State v. Campbell*, 166 Wn. App. 464, 469, 272 P.3d 859 (2011). Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the truth of the finding. *State v. Halstien*, 122 Wn.2d 109, 129, 857 P.2d 270 (1993).

Our review of the transcript from the suppression hearing convinces us that each of the challenged findings are supported by Sargent Boyd's testimony, which is enough evidence to persuade a fair minded rational person of the truth of the findings. Accordingly, because substantial evidence supports the findings, Nelson's challenges fail.

Nelson seems to also challenge the credibility of Sargent Boyd's testimony. However, credibility determinations are reserved for the trier of fact, and this court defers to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the

---

[11] Nelson attempted to challenge the findings by pro se motion in the trial court, however it is unclear whether the court considered his motion as he was represented by counsel.

persuasiveness of the evidence. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990); *State v. Emery*, 161 Wn. App. 172, 199, 253 P.3d 413 (2011).

Nelson also argues that the conclusions of law are not supported by the testimony from the hearing and raises other unclear challenges to the conclusions of law. We "review de novo whether the trial court's conclusions of law are supported by its findings of fact." *State v. Rosas-Miranda*, 176 Wn. App. 773, 779, 309 P.3d 728 (2013).

A *Terry* stop is permissible when an "officer has 'a reasonable and articulable suspicion that the individual is involved in criminal activity.'" *State v. Howerton*, 187 Wn. App. 357, 364, 348 P.3d 781 (2015). "Articulable suspicion" requires a "substantial possibility that criminal conduct has occurred or is about to occur." *State v. Kennedy*, 107 Wn.2d 1, 6, 726 P.2d 445 (1986). In light of this well-established rule, Nelson's argument that an officer must "see the crime himself" to conduct a *Terry* stop is without merit. Articulable suspicion does not require an officer to have witnessed a crime in progress.

Here, the trial court's findings support its conclusion that Sargent Boyd had reasonable suspicion to stop Nelson. Boyd was aware of a reported burglary, a suspicious car linked to Nelson in the area, and subsequent reports of a man matching Nelson's description behaving suspiciously. Boyd then encountered Nelson nearby. Nelson's flight upon being ordered to submit to a frisk further supports reasonable

suspicion. Accordingly, the trial court properly concluded the *Terry* stop was justified, and Nelson's challenges to the conclusions of law fail.[12]

Nelson argues that the trial court abused its discretion when it signed the findings and conclusions prepared by the prosecutor  This argument fails. It is not error for the trial court to direct a party to draft proposed findings and conclusions for the court to sign, in fact, this is a common occurrence. *See*, *e.g.*, *State v. Van Buren*, 112 Wn. App. 585, 600, 49 P.3d 966 (2002) (analyzing findings and conclusions proposed by the prosecutor and determining that the inclusion of an aggravating factor not identified by the court in its oral ruling did not warrant relief).

Nelson argues the trial court abused its discretion in finding probable cause to charge him with the crimes. Nelson did not object to probable cause during his preliminary appearance; thus, under RAP 2.5(a), we decline to review this issue.

D. *Nelson's CrR 7.4 Motion to Arrest Judgment*

Nelson argues that the court abused its discretion by denying his CrR 7.4 motion to arrest judgment on procedural grounds. He contends that there was insufficient evidence that he took a firearm. We disagree with these arguments.

Under CrR 7.4, a defendant may bring a motion for arrest of judgment for "insufficiency of the proof of a material element of the crime." CrR 7.4(a)(3). The

---

[12] For these same reasons, Nelson's challenges to the trial court's initial email ruling, premised on the court's reliance on Sargent Boyd's testimony, also fail.

standard for sufficiency of evidence in a criminal trial is whether "any rational trier of fact, viewing the evidence in a light most favorable to the [S]tate, could find the essential elements of the charged crime beyond a reasonable doubt." *State v. Longshore*, 141 Wn.2d 414, 420-21, 5 P.3d 1256 (2000). When reviewing the denial of a CrR 7.4 motion, we apply the same standard as the trial court. *Id*. at 420.

Nelson contends the trial court erred in denying his motion on procedural grounds. However, CrR 7.4(b) explicitly requires that a motion brought under the rule must be both "served and filed." Here, defense counsel failed to file the motion with the court, a requirement plainly stated in the rule. The trial court therefore did not abuse its discretion in finding that the defense failed to comply with CrR 7.4. Moreover, this argument is also nonconsequential because the trial court denied the CrR 7.4(b) motion on the merits.

Nelson argues that there was insufficient evidence that he took a firearm. The trial court disagreed, and denied Nelson's CrR 7.4 motion on its merits, concluding that sufficient circumstantial evidence supported the firearm element of the charged crimes. We agree with the trial court's conclusion.

In claiming insufficient evidence, the defendant necessarily admits the truth of the State's evidence and all reasonable inferences drawn from it. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). These inferences "must be drawn in favor of the State and interpreted most strongly against the defendant." *Id*. Direct and circumstantial

evidence are weighed equally. *State v. Scanlan*, 193 Wn.2d 753, 770, 445 P.3d 960 (2019).

While there was no direct evidence showing that Nelson took the gun during the burglary, circumstantial evidence and the reasonable inferences therefrom, viewed in the light most favorable to the State, were sufficient for a rational trier of fact to find the essential firearm element beyond a reasonable doubt. The evidence included a video of Nelson in the area where the burglary occurred, his flight from Sargent Boyd, his possession of some of the other items taken from the victim's shop including the victim's coat, and a shell casing found in his pocket that matched the ammunition used in the victim's missing gun. As a result, the trial court did not abuse its discretion in denying Nelson's CrR 7.4 motion on procedural grounds or in finding sufficient evidence to support the firearm element of the charged crime. Thus, Nelson's argument fails.

Related to these arguments, Nelson also contends that all of his appointed counsel, including appellate counsel, were ineffective for failing to challenge the sufficiency of the evidence on the firearm element. This argument also fails. Nelson's trial counsel did challenge the sufficiency of the evidence. To the extent, Nelson argues that his trial counsel was ineffective for failing to comply with the procedural requirements of CrR 7.4, Nelson fails to show prejudice because the trial court ultimately denied the motion on the merits.

As for Nelson's claim that his prior attorneys–those who withdrew before trial–were ineffective for not challenging the sufficiency of the evidence, he fails to demonstrate prejudice. Any alleged deficiency on their part is immaterial because his trial counsel ultimately raised the sufficiency challenge after trial. Without a showing of prejudice, Nelson's ineffective assistance of counsel claim fails.

E. *Nelson's Other Ineffective Assistance of Counsel SAG Arguments*

Nelson raises numerous arguments regarding the ineffectiveness of his appointed attorneys. These claims are addressed in turn:

At the outset we note that Nelson repeatedly argues in his SAG that all of his appointed attorneys were ineffective for failing to object on constitutional speedy trial and CrR 3.3 grounds. However, Nelson's appellate counsel made these arguments in Nelson's opening and reply briefs, and we addressed them above. Therefore, we decline to review these SAG arguments that are repetitive of the briefing. RAP 10.10(a).

i. *First Appointed Counsel*

Nelson contends his first appointed counsel was ineffective for failing to include certain arguments in her CrR 3.6 motion to suppress. He contends the motion miscommunicated the time of the seizure but he does not explain what the correct time was, how this constituted deficient performance, or how this caused him prejudice. Accordingly, this argument fails.

Nelson contends counsel failed to allege that the officer exceeded the scope of the *Terry* stop when he handcuffed Nelson. However, the motion primarily argues that the *Terry* stop of Nelson constituted an unlawful search and seizure for lack of reasonable suspicion. Thus, this argument fails.

Nelson further asserts that his flight was to "avoid assault" by officers and that counsel should have included this argument in the motion to suppress. However, he offers no argument or explanation for why this information was relevant to the motion to suppress, or how the omission of the information constituted deficient performance or caused him prejudice.

Moreover, there is no evidence in the record to support Nelson's argument. "The burden is on a defendant alleging ineffective assistance of counsel to show deficient representation based on the record established in the proceedings below." *McFarland*, 127 Wn.2d at 335. Without supportive evidence in the record, Nelson cannot show deficient performance. Thus, this argument fails.

Nelson argues that counsel failed to argue that Nelson could not obstruct because he believed the arrest was unlawful. Again, he fails to demonstrate the relevance of this information to the motion to suppress or how its omission constituted deficient performance or caused prejudice. And again, there is no evidence in the record to support Nelson's argument. Without such evidence, Nelson cannot show deficient performance. Thus, this argument fails.

Nelson claims his counsel omitted arguments about searches conducted in the police car and at the jail from the suppression motion. However, he does not demonstrate how these omissions were deficient or how they caused prejudice. Accordingly, these claims fail.

Nelson argues that counsel was ineffective for agreeing to the findings and conclusions from the July 19, 2021 suppression hearing that were prepared by the prosecutor. However, he provides no evidence that defense counsel agreed to these findings. The hearing transcript shows that defense counsel consistently objected and argued against the State's positions. This argument fails.

### ii. *Fourth Appointed Counsel (Trial Counsel)*

Nelson argues that his trial counsel was ineffective for failing to bring a CrR 8.3(b) motion due to government misconduct. But that rule concerns motions for dismissal brought by the court, not defense counsel. CrR 8.3(b). Thus, it was not deficient performance for counsel to refrain from bringing a motion under that rule. This argument fails.

Nelson argues trial counsel was ineffective for failing to file a motion to dismiss. He does not specify the grounds for such a motion or explain how its absence constituted deficient performance or caused prejudice. This claim fails.

*iii. Appellate Counsel*

Nelson claims his appellate counsel is ineffective for failing to "follow up" on his first appointed trial counsel's objections during the first suppression hearing. He does not clarify which objections he is referring to; therefore, we decline review because Nelson fails to adequately inform us of the "nature and occurrence of the alleged errors." *Alvarado*, 164 Wn.2d at 569.

Nevertheless, to prevail on this type of ineffective assistance of appellate counsel claim, the appellant must "show that [(1)] the legal issue appellate counsel failed to raise had merit," and (2) petitioner was "actually prejudiced by the failure to raise or adequately raise the issue." *In re Pers. Restraint of Dalluge*, 152 Wn.2d 772, 787, 100 P.3d 279 (2004). If an appellant "can show that his appellate counsel failed to raise an issue with underlying merit, then the first [element] of the ineffective assistance test is satisfied." *Id*.

Here, Nelson fails to show that the unraised issue had merit. To the extent he refers to hearsay objections raised by his first counsel during the suppression hearing, as discussed above, it was not error for the trial court to permit hearsay evidence during that hearing. Therefore, appellate counsel was not ineffective for omitting a meritless issue. This claim fails.

F. *Sentencing Errors*

Nelson raises various sentencing-related arguments, which are addressed in turn.

29

### i. Prior Out-Of-State Convictions

Nelson contends that the trial court erred by including his Idaho convictions in his offender score calculation without first conducting a comparability analysis. He argues that his acknowledgment of his criminal history does not equate to an agreement that the out-of-state convictions are comparable to Washington offenses.

Nelson is correct that the trial court included his Idaho convictions in his offender score calculation. He is also correct that his acknowledgement of his criminal history is not the same as affirmatively acknowledging that the convictions were comparable to Washington crimes. *See State v. Lucero*, 168 Wn.2d 785, 789, 230 P.3d 165 (2010) (noting that comparability was not satisfied when the defendant "did not 'affirmatively acknowledge' that his California convictions were comparable to Washington crimes."). However, any error here was harmless.

Generally, an incorrect offender score requires remand for resentencing using a corrected score. *State v. Schwartz*, 194 Wn.2d 432, 438, 450 P.3d 141 (2019). But a scoring error is harmless if a recalculated score does not affect the defendant's standard range and the trial court did not express a desire to impose a sentence at the low end of the range. *State v. Argo*, 81 Wn. App. 552, 569, 915 P.2d 1103 (1996).

Here, Nelson's offender score including his Idaho prior convictions was calculated at "23" for the first degree burglary conviction, "17" for the theft of a firearm conviction, "17" for the first degree unlawful possession of a firearm conviction, and "18" for the

30

second degree theft conviction. For each count, the court imposed a standard range sentence. Our review of the score calculations shows that, even excluding the Idaho convictions, Nelson's offender scores for each count would remain "9+," the maximum offender score.

Accordingly, the standard range for the above mentioned convictions would remain the same. *See Alvarado*, 164 Wn.2d at 561 ("A defendant's standard range sentence reaches its maximum limit at an offender score of nine."); *see also* RCW 9.94A.510. Moreover, the record does not indicate that the trial court expressed a desire to impose a low-end sentence for any of the counts. Thus, any error in including non-comparable Idaho convictions in Nelson's offender scores was harmless.

### ii. Same Criminal Conduct

Nelson next argues that the trial court "failed to calculate the previous Washington 'Same Criminal Conduct' Charges as the same criminal conduct as was already shown in previous judgment and sentencing documents." SAG at 16. This argument fails because it appears to rely on documents outside the record and does not adequately inform us of the nature or occurrence of the alleged error. Without sufficient details or supporting documentation, we cannot review this claim and it is properly raised in a PRP. *See Alvarado*, 164 Wn.2d at 569.

31

### iii. Fines and Costs

The trial court determined that Nelson was indigent, then imposed a $500 VPA and a $1,000 fine. Nelson argues that imposing the fine and cost was error given his indigence.

First, the VPA must be struck on remand. Recent legislative changes and case law establish that the VPA cannot be imposed on indigent defendants in cases pending on appeal. *State v. Schultz*, 31 Wn. App. 2d 235, 254-55, 548 P.3d 559 (2024). Because Nelson was found indigent and his case is pending on appeal, the VPA must be removed from his judgment and sentence.

Second, the trial court did not err in imposing the $1,000 fine. Under Washington law, a fine is not considered a "cost" subject to RCW 10.01.160(3)'s prohibition on imposing court costs on indigent defendants. *State v. Clark*, 191 Wn. App. 369, 376, 362 P.3d 309 (2015). Thus, the fine was properly imposed.

### iv. Restitution

The trial court ordered Nelson to pay $3,203.40 in restitution: $1,463.40 for damage to a vehicle Nelson jumped on while fleeing from Sergeant Boyd, and $1,740.00 to the burglary victim for items stolen. Neither Nelson nor defense counsel objected to this ruling during sentencing.

Nelson argues that the trial court improperly calculated restitution because it "failed to assess the value of the items alleged to have been stolen or actually possessed." SAG at 16. We construe this argument as challenging the $1,740.00 restitution ordered.

We decline review of this issue because Nelson waived it by failing to object on this basis during sentencing. *See* RAP 2.5(a). An objection would have allowed the State to supplement the record with any deficiency and support its argument for the amount of restitution.

Furthermore, the record on appeal is insufficient to consider this issue. The prosecutor indicated that the victim would prepare a formal claim for restitution, but no such claim documenting the specific items or their valuation is included in the record on appeal. Without this documentation, we cannot determine the basis for the restitution amount. We do not decide issues on direct appeal that rely on evidence outside the record. *See Alvarado*, 164 Wn.2d at 569.

G.  *Other Miscellaneous Arguments*

Nelson contends he did not obstruct and that his flight from Sargent Boyd "was not in response to a guilty conscience." SAG at 36-37. His argument, however, fails to inform this court of the nature or occurrence of any alleged error. *Id*. Thus, we decline to review it.

No. 39687-8-III
*State v. Nelson*

Last, Nelson raises unclear arguments about the requirement for law enforcement to give *Miranda*[13] warnings before conducting custodial interrogation. However, he fails to inform this court of any particular *Miranda* violation during his arrest. Accordingly, because he fails to inform this court of the nature or occurrence of the alleged error, we decline review. *Id.*

We affirm Nelson's convictions, but remand for the trial court to strike the VPA.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
                    Staab, A.C.J.

WE CONCUR:

_____
        Murphy, J.

_____
        Cooney, J.

_____

[13] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).